



FILED

5/26/2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AXM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| **LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and RYAN ATKINS,** | Case No. 1:26-cv-04038 |
| Plaintiffs, | Hon. Judge Thomas M. Durkin |
| | Hon. Mag. Judge Gabriel A. Fuentes |
| v. | |
| **AMANDA GECEWICZ,** | |
| Defendant. | |

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'

### EMERGENCY MOTION FOR LIMITED INJUNCTIVE RELIEF

Defendant Amanda Gecewicz ("Defendant"), proceeding pro se, respectfully submits this

Response in Opposition to Plaintiffs' Emergency Motion for Limited Injunctive Relief and states

as follows:

### RELEVANT FACTS

Plaintiffs seek extraordinary emergency injunctive relief arising from a longstanding and heavily

disputed copyright and ownership dispute concerning the short film Blackhatter. Plaintiffs ask

the Court to compel Defendant to effectively retract copyright enforcement actions and intervene

in disputed ownership issues before discovery, despite substantial contemporaneous evidence

demonstrating that Defendant independently created Blackhatter years prior to Plaintiffs'

involvement and consistently maintained ownership and creative control over the project.

Plaintiffs cannot satisfy the stringent requirements for emergency injunctive relief under Federal

Rule of Civil Procedure 65. The parties sharply dispute authorship, ownership, contractual intent,

scope of authorization, and the nature of the parties' respective creative roles. These disputed

factual and legal issues cannot properly be resolved on an emergency basis prior to discovery.

Moreover, Plaintiffs cannot establish likelihood of success on the merits, irreparable harm, or

knowing misrepresentation under 17 U.S.C. § 512(f), where Defendant possessed preexisting

screenplay materials, copyright registrations, contemporaneous documentation, and a

documented good-faith belief regarding her ownership rights prior to submitting any challenged

DMCA notices.

## **FACTUAL BACKGROUND**

Defendant originally wrote the first draft of Blackhatter in Spring 2015 while an undergraduate

student at DePaul University for a Digital Cinema Production course, years before Defendant

ever met Plaintiffs or entered into any relationship with Lakefront Pictures. Defendant possesses

contemporaneous evidence demonstrating that Blackhatter existed in tangible form long before

Plaintiffs' involvement, including a completed 2015 screenplay draft identifying Defendant as

the author, original concept artwork depicting the "Blackhatter" character dated May 22, 2015,

and a timestamped August 2, 2021 email transmitting a document titled "Black Hatter" weeks

before Defendant introduced the project to Plaintiffs. These materials further confirm that the

project's core story, themes, characters, and underlying creative expression originated with

Defendant alone. **(Exhibit A).**

Defendant first met Plaintiff Jennifer Karum through a mutual collaborator in connection with another film project. On September 15, 2021, Defendant met with Plaintiffs at Cinespace Studios Chicago and presented her original Blackhatter script, concept, characters, and visual identity that Defendant had independently created years earlier.

From the outset, Plaintiffs publicly acknowledged Defendant Amanda Gecewicz as the creator, writer, and director of *Blackhatter*. On September 21, 2021, at 11:20 p.m., Plaintiff Jennifer Karum wrote that she was "really happy that you and Sarah connected," confirming Defendant had only just met Sarah Quinn. The parties' agreement was executed that same day and identified *Blackhatter* as "Owner's Short Film," while Lakefront was retained in a production capacity. The following day, on September 22, 2021, Lakefront publicly announced it was "officially producing this wonderful female creator and writer's work Amanda Gecewicz," while using Defendant's own artwork and promotional materials. At the same time, Plaintiffs unilaterally assigned Sarah Quinn a "writer" credit and Plaintiff Jennifer Karum a "story editor" credit before work between the parties had even begun and without Defendant's approval. **(Exhibit B)**.

This chronology materially undermines Plaintiffs' present characterization that Lakefront substantially developed the screenplay from inception or that Plaintiffs originated the underlying creative work. Rather, Plaintiffs' own contemporaneous public statements support Defendant's position that Blackhatter preexisted Plaintiffs' involvement and that Plaintiffs were brought into an already-existing creative property in a production-oriented capacity.

The Production Agreement and subsequent Addendum consistently identify Defendant as the 'Owner' of Blackhatter while describing Plaintiffs only in production and producer capacities. The Agreement contains detailed provisions regarding credits, publicity, promotional rights, and production responsibilities, but contains no express language establishing joint authorship, co-ownership, or any transfer or assignment of Defendant's preexisting screenplay or copyright interests to Plaintiffs, nor any written copyright assignment as contemplated under 17 U.S.C. § 204(a). Absent such written language, the agreements do not reflect any transfer of Defendant's preexisting copyright ownership interests. Nor does the Agreement contain language reflecting an intent by the parties to function as joint or co-authors of the underlying work. **(Exhibit C).**

To the contrary, Paragraph 21 restricts Plaintiffs from utilizing Defendant's concept or story with third parties without Defendant's written consent. Paragraph 12 further states that agreements with hired personnel would be "between Amanda Gecewicz, or a formed LLC with Amanda as owner," while confirming that "Lakefront Pictures is only acting on behalf of Amanda." The Addendum likewise confirms that Lakefront Pictures was acting "on behalf of" Defendant and Defendant's LLC in connection with production administration and related agreements. **(Exhibit D)**.

Plaintiffs' assertion that Lakefront 'prepared storyboards, developed character profiles, and wardrobe mock-ups' is directly contradicted by project communications and documents. Defendant herself authored and circulated the project's character descriptions, logline, and underlying story concepts, while emails further demonstrate that storyboard work was being outsourced to independent third-party artist, Jeffrey Moy, to work with Defendant on, after Plaintiffs expressly represented they had merely 'been hired to produce another short film' for Defendant and referred to Defendant as 'our director.' **(Exhibit E)**. These records materially

undermine Plaintiffs' present characterization that Lakefront originated or substantially developed the underlying creative work or screenplay authorship from inception.

Additional third-party communications further reflect Plaintiffs' own understanding of Defendant's role as the principal creative force and executive decision-maker behind Blackhatter. In outreach to outside casting and production contacts, Plaintiff Jennifer Karum described Blackhatter as a project 'elevating a new female writer/director' and summarized Defendant's storyline and creative concepts while presenting Lakefront in a production capacity. Other project communications similarly referred to 'Amanda's vision,' acknowledged Defendant's approval authority over creative decisions and shot lists, and reflected that screenplay revisions were being submitted for Defendant's review and approval rather than independently authored or approved by Plaintiffs. The subject line of one of the script emails references a "re-write," further reflecting that the screenplay already existed in tangible form by the time the parties' began work on the film. (**Exhibit F**).

Consistent with Defendant's longstanding understanding regarding ownership and authorship, Defendant later completed copyright and Writers Guild of America registrations in 2022 and 2023 respectively, relating to Blackhatter that identified both Defendant and Sarah Quinn in connection with the screenplay. The underlying communications reflect that Sarah Quinn's involvement consisted of making limited revisions and adjustments to Defendant's preexisting screenplay under Defendant's supervision and creative direction, rather than originating the underlying work itself. These filings directly undermine Plaintiffs' present allegations of fraud or bad faith, as Defendant openly acknowledged Quinn's contributions rather than attempting to conceal them. The registrations are therefore consistent with Defendant's documented good-faith

understanding regarding the parties' respective creative contributions and do not reflect any intent to deceive or misappropriate authorship. (**Exhibit G**).

Defendant consistently maintained ownership of Blackhatter and retained final creative authority throughout production. On November 24, 2021, Plaintiff Jennifer Karum expressly complimented Defendant's directing, stating Defendant had done "a fantastic job directing" and had "taken the reigns by the horn," directly contradicting Plaintiffs' present assertions that Defendant required Plaintiff Karum to assume a directing role or exercise creative control over the project at any point. When Defendant later discovered Plaintiff Karum publicly identifying herself as a "co-director" of the project on her personal website in late 2021, Defendant immediately objected. Plaintiffs then assured Defendant on December 5, 2021 that the unauthorized "co-director" designation would be removed and represented that Plaintiff Karum's "actual resume" would not reflect such credit. Despite those assurances and Defendant's repeated objections over the following years, Plaintiff Karum later resumed publicly representing herself as a director of Blackhatter in promotional materials and her personal Electronic Press Kit ("EPK"), including listing purported "directing awards" associated with Blackhatter on multiple occasions in Fall 2025, which she never received. These repeated and escalating public misrepresentations regarding creative authority and authorship, together with other ongoing disputes and conduct between the parties over the years, ultimately prompted Defendant, through counsel, to issue the January 27, 2026 termination letter revoking any authorization to exploit, promote, or publicly associate with Blackhatter. (**Exhibit H**).

On January 27, 2026, Defendant, through counsel Steve Barron, issued a formal Notice of Termination and Cease-and-Desist letter revoking authorization for continued exploitation and promotion of Blackhatter-related materials and demanding removal of related content. The 34

page letter with extensive exhibits A through V, outlined repeated unauthorized credit attribution, repeated public misrepresentations regarding authorship and directing roles, continued use of Blackhatter promotional materials despite Defendant's objections, as well as alleged misconduct, harassment, and unwanted monitoring directed toward Defendant over the course of several years since the project concluded. (**Exhibit I**).

Despite receiving the January 27, 2026 termination notice and possessing full knowledge of Defendant's registered copyrights and ownership claims, Plaintiffs neither responded to the letter nor removed the disputed Blackhatter-related materials and posts. Instead, Plaintiffs continued publicly displaying and promoting disputed Blackhatter-related materials for months thereafter despite Defendant's express revocation of authorization.

As a result, Defendant submitted DMCA takedown notices directed toward Blackhatter-related promotional content and materials based upon Defendant's documented and longstanding good-faith belief regarding her ownership rights following termination of the parties' relationship. Defendant openly identified herself in those notices and referenced her copyright registration information. (**Exhibit J**).

Further consistent with Defendant's longstanding understanding of the parties' respective roles, Defendant and Sarah Quinn executed a written clarification agreement on February 18, 2026, following the January 27, 2026 termination letter and prior to the present litigation, memorializing that Ms. Quinn's screenplay revisions were performed at Defendant's request and under Defendant's creative supervision, that Defendant retained final creative authority over Blackhatter, and that Ms. Quinn did not claim ownership or joint authorship rights in the work.

This clarification is consistent with Defendant's prior copyright registrations, contemporaneous communications, and the parties' contractual framework since 2021. **(Exhibit K)**.

Plaintiffs did not initiate the present litigation until after repeated DMCA reports resulted in the disabling of Lakefront Pictures' primary Instagram account months later. On April 8, 2026, Plaintiffs' counsel sent Defendant a cease-and-desist letter accusing Defendant of "fraud" and demanding rescission of the takedown notices, after which counsel for the parties discussed both settlement and potential account reinstatement issues. Following the filing of the lawsuit, Plaintiffs repeatedly demanded that Defendant rescind the takedown notices and directly contact social media platforms regarding reinstatement. Defendant did not categorically refuse to cooperate regarding reinstatement efforts, but reasonably declined to take unilateral action outside the context of a finalized written settlement agreement in order to avoid further ambiguity regarding ownership rights, authorization, and the future use of Blackhatter-related materials following any potential account reinstatement. Plaintiffs nevertheless proceeded with the present emergency motion while simultaneously permitting Defendant approximately forty-five days to respond as settlement discussions continued. Plaintiffs' own counsel also later acknowledged that at least one platform advised Plaintiffs litigation would likely be necessary to attempt reinstatement of the accounts. These facts materially undermine Plaintiffs' present characterization of the matter as involving a sudden or irreparable emergency requiring extraordinary injunctive relief. **(Exhibit L).**

Defendant's ownership assertions did not originate with the present dispute or the challenged DMCA notices. As early as April 2023—years before the present litigation—Defendant expressly informed Plaintiff Karum that Blackhatter and related materials had been copyrighted in Defendant's name, objected to Plaintiffs' unauthorized claims of co-directorial authority, and

demanded that Plaintiffs cease continued use and promotion of the project. **(Exhibit M).** Plaintiffs therefore possessed longstanding notice of Defendant's ownership position and objections well before the events giving rise to the present action and chose not to contest it.

Defendant further notes that the recent Wix communication referenced by Plaintiffs was not a new takedown request, but a follow-up concerning Defendant's prior April 2, 2026 copyright complaint relating to Blackhatter-related material on Plaintiff Karum's professional website. Notably, after filing the present emergency motion and representing that disputed Blackhatter-related subject matter would remain removed during these proceedings, Plaintiffs subsequently reposted substantially similar project references on Plaintiff Karum's resume materials under a modified title from "Blackhatter" to "Batterhat" while retaining the same production year, credited role, and corresponding project information. These actions further call into question Plaintiffs' representations to the Court and whether Plaintiffs intend to abide by their own stated assurances regarding the continued use of disputed Blackhatter-related material during the pendency of this litigation. **(Exhibit N).**

## LEGAL STANDARD

Preliminary injunctive relief is "an extraordinary and drastic remedy." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, Plaintiffs must clearly establish: (1) a likelihood of success on the merits; (2) irreparable harm absent immediate relief; (3) inadequate legal remedies; and (4) that the balance of harms and public interest favor relief. Fed. R. Civ. P. 65. Plaintiffs fail to satisfy these requirements.

## ARGUMENT

## I. PLAINTIFFS CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs' motion depends upon contested assertions regarding ownership, authorship, and authorization that are directly contradicted by contemporaneous evidence and the parties' contractual framework.

The Production Agreement repeatedly identifies Defendant as the "Owner" while restricting Plaintiffs from utilizing Defendant's concept or story without written consent. The Agreement contains no express language establishing joint authorship or transferring Defendant's preexisting screenplay rights to Plaintiffs.

Defendant further possesses contemporaneous evidence establishing that Blackhatter existed years before Plaintiffs' involvement. Plaintiffs' own contemporaneous public statements likewise identified Defendant as the creator, writer, and director of Blackhatter.

At minimum, the parties present heavily disputed factual and legal issues concerning ownership, authorship, contractual intent, and scope of authorization that cannot properly be resolved on an emergency basis before discovery.

## II. PLAINTIFFS CANNOT ESTABLISH KNOWING MISREPRESENTATION UNDER 17 U.S.C. § 512(f)

Liability under 17 U.S.C. § 512(f) arises only where a party knowingly and materially misrepresents that material is infringing.

Here, Defendant possessed:

(a) preexisting screenplay materials and artwork dating back to 2015;

(b) contemporaneous evidence predating Plaintiffs' involvement;

(c) copyright registrations;

(d) WGA registration materials;

(e) contractual provisions identifying Defendant as "Owner"; and

(f) contemporaneous communications supporting Defendant's understanding regarding creative control and authorship.

These facts independently establish Defendant's documented and longstanding good-faith belief regarding her ownership rights and authorization position. Regardless of the parties' ultimate ownership dispute, Plaintiffs cannot establish the knowing material misrepresentation required under § 512(f).

### III. PLAINTIFFS FAIL TO ESTABLISH IRREPARABLE HARM

Plaintiffs' assertions of catastrophic and irreparable harm are substantially undermined by their continued operation of numerous professional social media accounts, websites, and promotional platforms following the challenged takedown activity.

As reflected in Defendant's exhibits, Plaintiffs continue actively promoting ongoing projects and film ventures across multiple social media platforms, including additional Lakefront-related accounts and projects unrelated to Blackhatter. Publicly accessible accounts presently maintained and operated by Plaintiffs include, among others:

• Lakefront Pictures Facebook page;

• A Snowbound Christmas Instagram and Facebook pages;

• Lakefront Actor Reels Instagram account;

• Lakefront Film Institute Instagram account;

• Lakefront Creative Group Facebook and Instagram accounts;

• The Unseen Feature Film Facebook and Instagram accounts; and

• Lakefront's YouTube channel and related promotional media presence.

These accounts continue actively promoting all Plaintiffs' business activities, productions, actor services, educational ventures, and ongoing film projects. Plaintiffs also created additional promotional accounts after the alleged harm described in their filings, including the 'Lakefront Actor Reels' Instagram account in approximately April 2026. **(Exhibit O)**. The continued operation and expansion of Plaintiffs' broader social media presence demonstrates Plaintiffs' ability to mitigate any alleged disruption and materially undermines Plaintiffs' assertion that Defendant's challenged reports rendered Plaintiffs unable to market themselves, continue operations, or promote future projects.

Additionally, Plaintiffs' alleged injuries primarily concern disputed business and promotional interests that are compensable through monetary damages if Plaintiffs were ultimately to prevail.

Plaintiffs also waited years after the parties' relationship formally deteriorated and after Defendant's termination notice before filing the present motion, further undermining any claim of immediate emergency circumstances.

Moreover, Plaintiffs themselves continued treating the matter as part of an ongoing negotiable dispute after the challenged account actions occurred. Plaintiffs' counsel discussed potential

settlement structures and provided Defendant approximately forty-five days to respond to the lawsuit while discussions continued, which further undermines Plaintiffs' present characterization of the matter as requiring immediate extraordinary emergency intervention.

Notably, Plaintiffs have submitted no exhibits or competent evidence demonstrating actual lost business, canceled opportunities, disrupted operations, lost revenue, or other concrete irreparable harm resulting from the challenged account actions.

## IV. THE REQUESTED RELIEF IS IMPROPER MANDATORY INJUNCTIVE RELIEF

Plaintiffs seek mandatory injunctive relief compelling Defendant to affirmatively contact third-party platforms and effectively retract copyright enforcement actions despite substantial disputed ownership issues. Plaintiffs therefore seek relief altering, rather than preserving, the status quo by compelling Defendant to retract copyright enforcement actions prior to adjudication of the parties' disputed ownership claims.

Granting such relief would improperly require the Court to effectively prejudge contested copyright, ownership, and contractual issues before discovery and prior to adjudication on the merits.

Moreover, Defendant did not categorically refuse to discuss account reinstatement issues. Rather, Defendant expressed willingness to address such issues within the context of a comprehensive written settlement agreement resolving the parties' broader ownership, authorization, and usage disputes in order to avoid ambiguity concerning future use and reposting of disputed Blackhatter-related materials.

## V. THE BALANCE OF HARMS AND PUBLIC INTEREST DO NOT FAVOR PLAINTIFFS

The balance of harms does not favor extraordinary injunctive relief where Defendant submitted the challenged notices pursuant to a documented and longstanding good-faith ownership belief supported by contemporaneous evidence and copyright registrations.

The public interest likewise does not favor compelling a party to retract copyright enforcement actions before underlying ownership disputes have been adjudicated.

## ADDITIONAL MATTERS

Defendant further denies any allegation or implication that she is evading service of process. Defendant does not reside in Illinois on a full-time basis and has remained available for communication throughout the parties' ongoing discussions and this litigation. Defendant's prior counsel was retained for limited purposes relating to the January 27, 2026 termination notice and related matters, and Defendant presently proceeds pro se due in part to limited financial resources.

Defendant is proceeding pro se and respectfully requests that the Court construe this filing liberally to the extent permitted under applicable law while considering the substantial factual disputes and documentary evidence presented herein.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs'

Emergency Motion for Limited Injunctive Relief in its entirety and grant such other relief as the

Court deems just and proper.

Respectfully submitted,

/s/ Amanda Gecewicz
Amanda Gecewicz
Defendant, Pro Se

Amanda Gecewicz
1 E Erie St
Suite 525-2761
Chicago, IL 60611

amg4894@gmail.com

DATED: May 26, 2026

**DECLARATION OF AMANDA GECEWICZ**

1.  I am the Defendant in this action and have personal knowledge of the facts stated herein.

2.  I am the creator, original writer, director, and sole financier of the project known as Blackhatter.

3.  I originally wrote the first draft of Blackhatter in Spring 2015 while an undergraduate student at DePaul University for a Digital Cinema Production course, years before I ever met Plaintiffs or entered into any relationship with Lakefront Pictures.

4.  Prior to Plaintiffs' involvement, Blackhatter already existed in tangible form, including screenplay drafts, story concepts, character materials, and original concept artwork created by me.

5.  Attached as Exhibit A are true and correct copies of materials reflecting the existence and development of Blackhatter prior to Plaintiffs' involvement, including a 2015 screenplay draft, original concept artwork depicting the "Blackhatter" character dated May 22, 2015, and an August 2, 2021 email transmitting a document titled "Black Hatter."

6.  Plaintiffs did not become involved with Blackhatter until 2021, years after I had already created and developed the project.

7.  I retained final creative authority and ownership over Blackhatter throughout the parties' relationship.

8.  The parties' written agreements consistently identified me as the "Owner" of Blackhatter while describing Plaintiffs in production-related capacities.

9.  To my knowledge, no written agreement was ever executed transferring or assigning my preexisting screenplay or copyright ownership interests in Blackhatter to Plaintiffs.

10. Attached as Exhibit C are true and correct copies of the parties' Production Agreement and related Addendum.

11. Throughout the production process, Plaintiffs repeatedly acknowledged my role as the project's writer and director in emails, messages, production materials, and public promotional statements. Plaintiffs also acknowledged my sole directing role in contemporaneous communications, including messages complimenting my directing work and assuring me that unauthorized co-director references would be removed.

12. Attached as Exhibits B, E, F, G, and related exhibits are true and correct copies of emails, text messages, promotional materials, production documents, and communications reflecting Plaintiffs' acknowledgments of my creative role and authority over Blackhatter.

13. During and after production, disputes arose concerning creative authority, public representations, and credit attribution relating to Blackhatter.

14. I objected to Jennifer Karum publicly representing herself as a co-director of Blackhatter because I never authorized or agreed to such credit.

15. Attached as Exhibit J are true and correct copies of communications and materials relating to those disputes, including my objections to unauthorized directing representations and the January 27, 2026 Notice of Termination and Cease-and-Desist letter issued through counsel.

16. The January 27, 2026 termination notice revoked authorization for continued exploitation and promotion of Blackhatter-related materials and demanded removal of disputed content.

17. To my knowledge, Plaintiffs did not respond to the termination notice and did not remove the disputed Blackhatter-related materials identified therein.

18. Based upon my longstanding understanding of my ownership rights in Blackhatter, I submitted copyright-related complaints and DMCA notices concerning online materials that I believed infringed or improperly exploited my copyrighted work.

19. I submitted those notices pursuant to a good-faith belief regarding my ownership and rights in Blackhatter.

20. Attached as Exhibit M are true and correct copies of representative communications reflecting my longstanding assertions of ownership and objections regarding unauthorized use and representations concerning Blackhatter.

21. Attached as Exhibit O are true and correct copies of publicly available materials reflecting Plaintiffs' continued operation of social media and promotional accounts following the alleged harms described in their filings.

22. I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 26, 2026.

/s/ Amanda Gecewicz

Amanda Gecewicz

**EXHIBITS TO DEFENDANT'S RESPONSE IN OPPOSITION**

**EXHIBIT A**
Page 1 of Original Script

<u>BLACKHATTER</u>

Written by

Amanda Gecewicz

DC 210
Spring 2015
DePaul ID: 1403226

INT. GAS STATION – NIGHT

**DANIEL**, early 20's, wiry and restless, wanders through the cramped aisles of a run down gas station mini mart just off the highway.

His friend, **PATRICK**, mid 20's, heavier build, jittery energy, pretends to browse chips near the entrance while keeping an eye on the cashier.

Daniel grabs a beef jerky stick from a rack, tears it open, and chews as he walks. He passes a rotating display of cheap sunglasses and slides on a pair.

At the counter, an exhausted CASHIER in his 30s rings up a trucker buying a pack of cigarettes.

Patrick lifts his hoodie slightly to reveal a handgun tucked into his waistband. Daniel notices.

                         DANIEL
             Not yet.

                         PATRICK
             Relax!

Daniel keeps moving deeper into the store. A STOCK BOY, 16, stands in the aisle stacking bottled waters. He notices Daniel pass by him. Daniel pretends to browse. The stock boy accidentally drops a few. They scatter across the floor. Daniel bends down to help him pick them up.

                         STOCK BOY
             Thanks. Appreciate it.

Daniel hands hime a few bottles.

                         DANIEL
             Rough night?

                         STOCK BOY
             Every night here's rough.

The stock boy laughs to himself and continues stacking bottles.

Daniel glances up toward the security mirror mounted above the aisle. BLACKHATTER stands directly behind him in the reflection. He whips around but nobody is there.

                         STOCK BOY (CONT'D)
             You good?

Daniel looks back toward the mirror.

Blackhatter
By, Amanda Gecewicz
5/22/15



Document shared with you: "Black Hatter" ➤

**Shawn B. (via Google Docs)** <drive-shares-dm-noreply@google.com>     Mon, Aug 2, 2021, 12:24 PM
to me ▾



shawnbrooks12@gmail.com shared a document

shawnbrooks12@gmail.com has invited you to **edit** the following document:

📄 Black Hatter

Open

**EXHIBIT B**

BLACKHATTER - LFP agreement ➤



↩ **Jennifer Karum** <jennifer@lakefrontpictures.com>     Tue, Sep 21, 2021, 11:20 PM
to me, Ryan ▾

Hi Amanda
So great to chat with you this evening and really happy that you and Sarah connected.

As discussed, we've attached the contract for you to sign. We'd love to get everything squared away and make an announcement for our exciting project together!

We look forward to working with you and creating a great project!



**EXHIBIT C**



PRODUCTION AGREEMENT

THIS AGREEMENT dated on September 21, 2021, is between Lakefront Pictures, LLC, Ryan Atkins & Jennifer Karum, Chicago, Illinois ("Producers") and Amanda Gecewicz, ("Owner") at 20813 Lone Pine Ct, Deer Park, IL 60010 for the Short film "Blackhatter" ("project"), and this agreement is entered into effect as of September 22, 2021. The Producers and Owner intend to produce Owner's Short Film, Blackhatter.

**ACCORDINGLY, IT IS AGREED AS FOLLOWS:**

1. Amanda Gecewicz has agreed to hire Lakefront Pictures, LLC as the Production Company for her short Film, "Blackhatter," filming in Chicago, Illinois and will provide payment to Lakefront Pictures, LLC, in the amount of $7,000 which will include a line item of payment toLakefront Pictures, as well as remaining funds to a seperate bank account under Lakefront Pictures to produce the project, and will provide Lakefront IMDB credit, First Position Title Credit with Lakefront Pictures animated logo on both intro and outro credits, and agrees to promote Lakefront Pictures as the Production Company on any and all Publicity relating to "Blackhatter" in perpetuity.

2. Amanda Gecewicz has also agreed to hire Ryan Atkins and Jennifer Karum as the main Producers for her short Film, "Blackhatter," filming in Chicago, Illinois and will provide payment to Jennifer Karum and Ryan Atkins allocated in the budget for Producer roles, along with providing individual IMDB credit, Single Card Title Second and Third Position in the Opening Titles of the Film and outro credits, and agree to promote Ryan Atkins and Jennifer Karum as the Producers on any and all Publicity relating to "Blackhatter" in perpetuity.

3. In addition, Amanda Gecewicz agrees to pay Lakefront Pictures, LLC $7,000 which includes cost to cover hiring personnel, securing locations, on-set insurance, food, catering, and anything necessary to produce the project. Amanda is aware that should Lakefront deem a need for further funds, Lakefront Pictures will notify Amanda and provide detailed information for such a request. Honoring the request for additional funds will be at Amanda Gecewicz's full discretion understanding it may impact the success of her film.

4. Producers agree to provide film knowledge, consulting services, hire crew, and provide support to the best of their ability to Owner.

5. Producers will put together deadlines, and information to best help and position Amanda Gecewicz for success to the best of their ability.

6. Producers will be on set every day of filming to guide the process and provide services and will be paid for their time on set. Should they not be able to be on set for any reason, they will provide written documentation via email of dates they cannot be on set. Medical emergencies, and family related emergencies will be excused and will not impede on production.

7. Amanda understands producers will be actively assisting to ensure directing captures the best footage but also maintains a smooth operation ensuring no hinderance on set. Amanda agrees to be amicable and open to adjustments deemed necessary by Producers for a successful completion of the project.

8. Ryan Atkins and Jennifer Karum and Lakefront Pictures, LLC will be attached to the project from Development through all post-production, festival submissions, distribution pitches and up and through negotiations for distribution, should there be such conversation.

9. In the event of separation, Producers and Production Company will be paid up to services provided, and given credit on IMDB and in credits of movie for positions fulfilled. If Development work is completed, the Lakefront Pictures animated Logo will be used regardless of any separation for "Blackhatter." along with IMDB credit, and payment agreements. No refunds will be provided once deposit is made.

10. Amanda Gecewicz authorizes Producers to hire crew, bring on teams to provide services for the filming of "Blackhatter," and to hire vendors necessary for filming.

11. Amanda agrees to provide minimum ½ of the budget payable to Lakefront Pictures in order for Lakefront Pictures to provide services at the time of signed agreement for production purposes in the amount of $3,500. If Amanda does not provide ½ the budget to Lakefront Pictures, LLC she will provide debit cards and proof of funds to Lakefront Pictures with access for Lakefront Pictures to ensure monies are available at any given time. In the event only ½ the funds are provided at time of signing, any additional funds not provided that result in overdraft charges will not be liability or responsibility of Lakefront Pictures, LLC and no payment will be expected from Lakefront Pictures, now or in the future.

12. Amanda understands that agreements with hired personnel will be in written contract between Amanda Gecewicz, or a formed LLC with Amanda as owner, and in signing confirms that Lakefront Pictures is only

acting on behalf of Amanda, her LLC if she chooses to create one; solely to administer paperwork for crew, and pay agreed upon payments to freelancers for the project. In the case that Amanda doesn't provide full payment to Lakefront Pictures, LLC to administer funds to personnel, Lakefront Pictures will not be held responsible or held liable to any 3rd party and is free and clear of any legal liability now or in the future.

- Amanda agrees that Lakefront Pictures, LLC and its members are only responsible for funds administered to Lakefront Pictures and only liable for funds in their possession related to agreed services for freelancers.

13. All contracts for actors, agents and freelancers will be with Amanda Gecewicz or her LLC, and Lakefront Pictures, LLC will not be liable for contracts regardless of Lakefront Pictures acting on behalf of Amanda, or any LLC formed and Lakefront Pictures, LLC will not be liable for any financial obligations to freelancers outside of agreed contracts between Owner and freelancer and Owner and vendor.

- Any lawyer fees, due to additional lawyer written contracts, or agreements related to crew, locations and filming, separate than what Lakefront Pictures provides, will be funded and provided by Owner in addition to $8,900 should legal be deemed necessary.

14. Amanda may be asked to provide insurance for set

15. Ananda may be asked to provide stunt coordinators for safety of actors and crew

16. Amanda agrees to a line item in the budget in the amount of $1,200 to hire Lakefront Pictures to produce the picture, not including additional line item should the film receive risiduals, profits and the like.

17. Any additional Producers Owner brings to the project, outside investors attachment, will need written approval by Producers along with agreement in writing.

18. Owner agrees to weekly communications on any and all updates/progress reports in regards to Development, Pre-Production, Production and pitching the film, along with any feedback that comes from potential licensees/studios/recipients/investors/festivals.

- Owner agrees to inform Producers of any network deal, distributor or 3rd party licensing in writing and agrees to attach Producers to the pitch to any 3rd parties. Producers understand there is no guarantee of future attachment from any network, studio or acquisition.

19. Lakefront Pictures, LLC, Ryan Atkins and Jennifer Karum will be in any and all pitch materials, publicity, marketing, social media and press kits for Blackhatter, or any name under the current story with the previous title Blackhatter.

- Upon Sale, acquisition or partnership, each Producer is entitled to 3% of Producer's Share Pro Rata pari passu with all Producers on the project.
- Lakefront Pictures, LLC will have a line item in the budget of 3% to be paid at the time of acquisition or buyout on top of $1,200 line item in budget.

20. Producers agree to not slander, deter, or else negatively influence others' decisions or participating individuals whether fact or opinion in perpetuity. Amanda agrees to not slander Producers or Lakefront Pictures whether deemed fact or opinion in perpetuity.

21. Producers are aware "Blackhatter" will be sharing proprietary storylines, future storylines and pitch materials, along with any additional marketing materials in association with the project. Producers agree to not utilize concept ideas with any 3rd party to produce the story, without written consent permission from Amanda Gecewicz.

22. Provided that Amanda Gecewicz and her team receive distribution, or a studio acquisition, on top of 3% Lakefront Pictures, LLC will receive 5% of the pro-rata share of Producer funds, and will be attached to any future project, as long as the studio agrees. Contracts will be negotiated at time of offer.

23. Producers, Ryan Atkins and Jennifer Karum will be invited to the premiere events, festivals, publicity events and pitch meetings related to "Blackhatter" and depending on Amanda Gecewicz's budget, Amanda will make every effort, in good faith, to pay for Jennifer Karum and Ryan Atkins of Lakefront Pictures to be present, including covering any hotel costs, flight, per diem and food. However it is agreed between the parties, Sundance, SXSW, Cannes or any international will be paid for in full for Jennifer Karum and Ryan Atkins.

- Should Amanda not be in a position to pay for Jennifer Karum and Ryan Atkins, to attend meetings or festivals there will be a deferred payment of the cost if and when Blackhatter makes net profit.
- Amanda will inform Jennifer Karum and Ryan Atkins of all festivals she applies to, and it will be a separate budget from the $7,000 that the funds for submissions come from

# LAKEFRONT PICTURES

- Amanda will ensure that Jennifer Karum and Ryan Atkins are aware of all flights and hotels Amanda books in effort to assist in providing them sufficient details for booking should Jennifer Karum and Ryan Atkins attend any festivals or pitch meetings.

24. Indemnity / Insurance. Company shall indemnify and hold harmless Producers from and against any claims, liabilities, costs or other amounts (including reasonable legal fees and costs) suffered by Producers in connection with the development, financing, production, marketing and/or exploitation of the film, excluding any matter arising out of Producer's gross negligence, willful misconduct and/or intentional violations of the terms of this Agreement. Producers will at all times be named as an additional insured party on general liability and errors and omissions insurance policies maintained by the Company in connection with distribution, exploitation, advertising and promotion of the Film. Such insurance coverage to extend through at least the second (2nd) annual anniversary of the initial commercial exploitation of the Short.

25. Filming dates scheduled for Nov 12th weekend and should it change, Producers must be notified snd dates agreed upon herein.

26. In signing the agreement below, Amanda Gecewicz agrees to pay $3,500 down payment for sign-on development to Lakefront Pictures, LLC which includes services provided herein by Lakefront Pictures and in addition, $3,500 by Oct 15 for the purpose of pre-production, production, and editing. Amanda is aware, should Lakefront Pictures be asked to provide specific editor, or post-sound or color requests, budget may change and more funds may be needed to meet such requests. As it stands, the color and sound will be included in this rate unless specific request for additional workshop of sound and color is requested.

This agreement is valid through Wednesday Sept 22, 2021, at 5 PM

Both parties enter and agree to the terms

_____
Owner(s) Signature of Lakefront Pictures, LLC

**9/21/2021**
_____
Date

_____
Owner Signature of Amanda Gecewic

9/21/21
_____
Date

# EXHIBIT D



PRODUCTION COMPANIES:
Lakefront Pictures, LLC
Owner: Ryan Atkins & Jennifer Karum
Indigo Pictures, LLC
Owner: Amanda Gecewicz

## CAST/CREW DEAL ADDENDUM

Addendum to all previously signed agreements for "Blackhatter" under Amanda Gecewicz and Lakefront Pictures.  Please note "Amanda Mae Visuals LLC" is now "Indigo Pictures LLC." Please make note that all agreements previously signed with Amanda Mae LLC are still valid however are now connected to Indigo Picture, LLC.  Lakefront Pictures, LLC is separate from Indigo Picture, LLC.

This agreement is with Indigo Pictures, LLC Owned by Amanda Gecewicz, Lakefront Pictures, LLC owned by Jennifer Karum and Ryan Atkins, and Freelancer/Freelancer. Freelancer understands that Lakefront Pictures, LLC was hired to help Produce the film and is not responsible for any agreement terms. Lakefront Pictures, LLC is acting solely on behalf of Indigo Pictures, LLC in providing on set work, administering agreements, and providing payouts on behalf of Indigo Pictures, LLC accounts.

# EXHIBIT E

Re: Blackhatter Character Breakdowns ▷

 **Amanda Gecewicz** <amg4894@gmail.com>                    Wed, Sep 29, 2021, 4:56 AM   ☆  ☺  ↩  ⋮
to Ryan, sarah, Jennifer ▾

This might need to be tightened up a bit, but this is what I was thinking:

Logline: A botched robbery leads one man to a twist of fate.

Plot: A young man enters a convenience store with one objective: to rob. Before he pulls out his gun, he meets a young girl who makes him question everything. When things go wrong he is left with the toughest choice of all.

> On Sep 28, 2021, at 10:03 AM, Amanda Gecewicz <amg4894@gmail.com> wrote:
>
> [DREW] mid 30's, open ethnicity. Tall, slender, and scruffy. He is quick-witted and temperamental. His life is falling apart due to poor choices and associations. He is accustomed to getting his way through violence.
>
> [CLAIRE] age 8-10, open ethnicity. Young and painfully honest. Is stuck in the cross fire not just in the convenience store, but at home as well.
>
> MOTHER [LISA] early 40's, open ethnicity. Very nurturing. Has a troubled home life, but puts on a smile for her daughter.
>
> [PETER] mid 50's, open ethnicity. Very invested in his community and keeping his storefront a safe place for everyone.
>
> [BLACKHATTER] any age, open ethnicity. Tall and slender, ideally 6ft or taller. Dressed in a black trench coat and top hat. They are very ambiguous and no facial features are visible. They are a symbol of death.

## Re: Storyboards for short film  ✉



**Jeffrey Moy** <artboymoy@gmail.com>                                   Tue, Oct 19, 2021, 11:49 PM   ☆   ☺   ↩   ⋮
to Ryan, Lakefront, me ▾

 

I'm going to be traveling to Baltimore starting tomorrow and through the weekend so the soonest i could do it would be next Tuesday.  If you can wait till then, I would be happy to help.

On Tue, Oct 19, 2021, 11:32 PM Ryan Atkins <ryan@lakefrontpictures.com> wrote:

> Hi Jeff,
>
> We have been hired to produce another short film. The shot list has to be refined a bit, but once finished, I was wondering if you wouldn't mind doing storyboards for our director? It is a 5 page script, but two scenes.
>
> I can provide the script and shot list within the next day.
>
> Would you be able to assist?
>
> Best Regards,
>
> Ryan Atkins
> Content Creator / Director of Photography / Producer



## BLACKHATTER

## Blackhatter Production Meeting 10/248tf2/2021:

**AGENDA:**

**TWO DAY SHOOT**

**PRE PRODUCTION:**
<mark>Amanda - TO DO</mark>

- Storyboard - work with Jeff Moy - *Amanda, ask Ryan to email Jeff, to set up a call
- Shotlist adjustment - lenses, inserts, movement, what lines
- Vince made a suggestion to go through the script and make emphasis on verbs to describe the actor's intentions line by line -- DID THIS GET DONE?
- Call and schedule time twice a week with Vince on going up until the shoot, and the meeting should happen even when Jennifer is in Iceland.
- Set meetings with department heads
- Go through auditions and select her top choices

**EXHIBIT F**

## Blackhatter short film audition request

 **Jennifer Karum** <jennifer@lakefrontpictures.com>     Thu, Oct 21, 2021, 8:26 AM
to Gray, Brittainy, ryan, Lakefront, me ▾

Hi Gray team!
This is Jennifer with Lakefront Pictures- I've worked with Brittainy. On the last few projects. Okay
We have a project called Blackhatter, a psychological thriller elevating a new female writer/director.  It is the story of a man who is robbing a convenience store who is confronted by a little girl that acts as his conscience. All while he is stalked by this other worldly figure, the Blackhatter. This will be two overnight shoots (11/12-11/ who represents "death" and the notion you can't escape death nor the consequences to your actions.

## Blackhatter Rewrite

 **Sarah Quinn** <sarah@lakefrontpictures.com>     Sun, Sep 26, 2021, 1:26 PM
to Jennifer, Ryan, me ▾

Hey all,

After talking with Vince last night.  This is what I've done with it.  I really enjoyed his idea about this being a sort of parable.  I've structured it in a  "3 trials" way. Drew is tested 3 times, with the little girl, the woman, and the cashier, and fails each time to show compassion or empathy to any of them.  The Blackhatter appears to him after the first two as a warning that his choices will have consequences. He, of course, ignores those warnings and fails the third as well and his consequences catch up to him and all three of these lives are destroyed because of him.

Take a look at this version and Amanda if you still want to chat this afternoon I'd be more than happy. I want to make sure you're good with the direction this is going.

Thanks!

Best,
--
Sarah Quinn
Assistant & Social Media Manager
**LAKEFRONT**
PICTURES

## Re: Blackhatter | Shot List

 **Ryan Atkins** <ryan@lakefrontpictures.com>     Sun, Nov 7, 2021, 6:14 PM
to Jennifer, Sarah, Joshua.schilling, cathy, Jonathan, Jeremy, Reynaldo, Damane, Rodney, savannah, Vincent, me ▾

Hi all,

Attached is the shot list for Blackhatter. The order is in shooting order for the most part and should allow us to accomplish a few things:

- Minimize lens swaps
  - Best ensures we use same lens for most all shots that need it
- Minimize lighting setups
  - Ensure we stay on same lighting setup as much as possible
- Allow non-essential cast (or steadicam operator) who are not needed for remaining shots to be wrapped

Our director, Amanda, has signed off on this and her consultant, Vince has done the same.

We are going to use the lens package we have in stock and if we need to go wider/closer, we will move closer/away from talent as needed to accomplish what we need.

This will be our shopping list and outline for the weekend. We may find opportunities to combine shots or reorder based on a million circumstances. As long as we are crossing off what we need and want for our storytelling and Amanda's vision.



Blackhatter | Shot List ➤

Ryan Atkins <ryan@lakefrontpictures.com>                                    Fri, Oct 15, 2021, 11:04 PM
to Jennifer, Vincent, Sarah, me ▾

Hi all,

Attached is my preliminary shot list +/- a shot or two. The idea was to reduce camera setups, lens swaps, etc, but to move in on a 50mm should a closer composition be needed. Hopefully you are able to visualize what my intentions are.

I have already spoken to Amanda tonight about it in depth.

Best Regards,

Ryan Atkins
Content Creator / Director of Photography / Producer
**LAKEFRONT**
PICTURES
Website | Facebook | Instagram | Twitter

# EXHIBIT G

**Registration Number**

# TXu 2-363-749

**Effective Date of Registration:**
March 07, 2023
**Registration Decision Date:**
April 10, 2023

## Title _____

**Title of Work:**    Blackhatter

## Completion/Publication _____

**Year of Completion:**    2021

## Author _____

•        **Author:**    Amanda Gecewicz
**Author Created:**    text
**Work made for hire:**    No
**Citizen of:**    United States
**Domiciled in:**    United States
**Year Born:**    1994

•        **Author:**    Sarah Quinn
**Author Created:**    text
**Work made for hire:**    No
**Citizen of:**    United States
**Domiciled in:**    United States
**Year Born:**    1997

Writers Guild of America, West, Inc.
7000 West Third Street
Los Angeles, California, 90048-4329
Telephone: 323-782-4500
Fax: 323-782-4803

# Documentation of Registration

The Writers Guild of America, West, Inc. issues this certificate to:

AMANDA MAE GECEWICZ

for the material entitled:

**Blackhatter**

by the following:

AMANDA MAE GECEWICZ
SARAH QUINN

Registration #: **2191991**
Material Type: **SCREENPLAY**
Registered By: **AMANDA MAE GECEWICZ**

Effective Date: **12/1/2022**
Expiration Date: **12/1/2027**

**Registration Number**

## PAu 4-173-667

**Effective Date of Registration:**
March 07, 2023
**Registration Decision Date:**
March 30, 2023

## Title

**Title of Work:** Blackhatter

## Completion/Publication

**Year of Completion:** 2021

## Author

- **Author:** Amanda Gecewicz
  **Author Created:** entire motion picture, direction, script/screenplay
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1994

## Copyright Claimant

**Copyright Claimant:** Amanda Gecewicz
20813 Lone Pine Ct., Deer Park, IL, 60010, United States

## Rights and Permissions

**Name:** Amanda Gecewicz
**Email:** amg4894@gmail.com
**Telephone:** (847)494-4894
**Address:** 20813 Lone Pine Ct.
Deer Park, IL 60010 United States

## Certification

**Name:** Amanda Gecewicz
**Date:** March 07, 2023

**EXHIBIT H**

Nov 24, 2021 at 5:16 PM

Jennifer Karum

Amanda I thin you did a fantastic job directing last night and taking the reigns by the horn and doing as best as you could. I understand you have a lot of stress and we are at the finish line which is the best part,. You should feel very accomplished having finished your first REAL film professionally with a full crew that almost felt like a studio. We made sure we did things safely, with tact and professionally on all fronts crew and cast. I am glad you are feeling confident about the work complete and just hold on stronger for the future. It isn't good you haven't been feeling well and I am so sorry you are going through that. The good news is that the doctors figured out what's wrong and got you medication to help with everything. That's a positive! Thank goodness for medicine. WE will absolutely work within the paremteers we discussed having what's called, a CLOSED cast and crew screening only

Dec 5, 2021 at 3:56 PM

Hey Jen- did you mention to Ryan what we discussed last night about changing the co-director credit on your website?

Jennifer Karum



It doesn't say director

I am in in audition that's the best I can do 😊

Don't worry my actual resume won't say co director

Ryan Atkins

Cool 😎 Best of Luck!

Thanks Jen! And break a leg on your audition, let me know how it goes!!

I assume it takes time for changes to show up, just wanted to mention it's updated when you click on producing/directing tab, but still listed as co-director when you click home and scroll down. Probably another easy fix 😊

Ryan Atkins

It'll get fixed. I promise.

Jennifer Karum

I am not sure what to say, I am in an audition

I sent you what's up there

it's all good





**EXHIBIT I**



150 S. Wacker Drive, Ste. 2400, Chicago, IL 60606
Direct 312.741.1027 | Main 312.741.1030
Email: sbaron@bhhlawfirm.com

**Steven L. Baron**

January 27, 2026

*VIA E-MAIL*

George J. Spathis
Levenfeld Pearlstein, LLC
120 S. Riverside Plaza
Suite 1800
Chicago, Illinois 60606
E-mail: gspathis@lplegal.com

**Re: Notice of Termination of Production Agreement and Request to Cease and Desist**

Dear Mr. Spathis,

We are counsel to Amanda Gecewicz ("Ms. Gecewicz"). We are informed and believe that you represent Lakefront Pictures, LLC, Ryan Atkins, and Jennifer Karum (k/k/a Jennifer Goodman). We understand that on September 21, 2021, Ms. Gecewicz entered into a Production Agreement (the "Agreement") with Lakefront Pictures, LLC, Ryan Atkins, and Jennifer Karum (collectively "Producers") to produce a short film by Ms. Gecewicz titled *Blackhatter* (the "Film"). We also understand that you have a copy of the Agreement. The film was subsequently produced and released in 2022. We write now to provide you with formal notice of the termination of the Agreement[1] and to demand that your clients cease and desist from making false statements about their role in the Film. We elaborate below.

George J. Spathis
January 27, 2026
Page 7

retain the right to "promote their work" on *Blackhatter* is legally unfounded, as production services do not establish ownership or enduring promotional rights. As the exclusive copyright holder, Ms. Gecewicz alone controls the film's reproduction, distribution, and display, and any unauthorized use constitutes infringement.

Due to your clients' material breaches, misconduct, and bad-faith actions, all prior acknowledgments, credits, or representations of involvement by Ms. Karum, Mr. Atkins, or Lakefront Pictures are hereby revoked. They possess no rights, credits, or association with *Blackhatter*, and any continued attempt to claim authorship, ownership, or promotional entitlement constitutes knowing misrepresentation under 17 U.S.C. § 106A and subject your clients to damages and penalties under 17 U.S.C. § 506. Your clients will also be exposed to liability and damages under 15 U.S.C. § 1125 (a) for causing confusion, mistake, or deception as to their affiliation, connection, or association with the *Blackhatter*.

On behalf of Ms. Gecewicz and without waiver of any other rights and remedies she may have, we demand within seven (7) days of the date of this letter, your clients:

- Immediately cease and permanently desist from all claims of involvement with *Blackhatter* in any capacity.
- Remove all public references to *Blackhatter* from social media, IMDb, LinkedIn, YouTube, websites, press kits, and promotional materials from 2021 to present, including any claims of authorship, direction, production, or festival recognition from all personal accounts and accounts of Lakefront Pictures.
- Refrain from any future claims to rights, credits, financial participation, or association with the project.
- Direct all communication regarding this matter to the undersigned.

If you have any questions about this matter or wish to discuss it, please contact me.

Sincerely,
**Baron Harris Healey**

By: _Steven L. Baron_

Steven L. Baron
Member

# EXHIBIT J

**From:** **Facebook** case++aazrz2jlnrceng@support.facebook.com
**Subject:** Intellectual Property Report #1446116826960380
**Date:** March 11, 2026 at 2:21 PM
**To:** amg4894@gmail.com

---

The Facebook Team received a report from you. For reference, your complaint number is 1446116826960380.

Please note that the form you filled out is for reports of alleged infringements or violations of your legal rights, such as copyright or trademark. If you filed that type of report, no further action is necessary. However, if you contacted our team about another matter, you might not receive a response.

If you're not confident that your issue concerns intellectual property rights, please consult the Intellectual Property section of the Help Center for additional information.
IP Help Center:
https://www.facebook.com/help/intellectual_property?ref=cr

Please note that we regularly provide the rights owner's name, your email address and the nature of your report to the person who posted the content you are reporting. You may wish to provide a professional or business email address for contact by users.

For help with matters other than infringement/violation of your legal rights, the links below may be helpful:
- Hacked accounts:
https://www.facebook.com/help/1216349518398524?ref=cr
- Fake/Impostor accounts (timelines):
https://www.facebook.com/help/174210519303259?ref=cr
- Abuse (including spam, hate speech and harassment):
https://www.facebook.com/help/263149623790594?ref=cr
- Pages (including admin issues):
https://www.facebook.com/help/pages?ref=cr
- Unauthorized photos or videos:
https://www.facebook.com/help/327689333983073?ref=cr
- Login issues:
https://www.facebook.com/help/login?ref=cr
- Help for users who have been disabled or blocked:
https://www.facebook.com/help/warnings?ref=cr

If the links above do not contain the information you're looking for, you may want to search the Help Center for more assistance:
https://www.facebook.com/help?ref=cr

As a reminder, if your submission contains a report of alleged infringement/violation of your legal rights, no further action is necessary. We will look into your matter shortly.

Thanks for contacting Facebook,

The Facebook Team
--------------------------
Describe your relationship to the rights owner. : I am the rights owner.
Your full name : Amanda Gecewicz
Email address : amg4894@gmail.com
Confirm your email address : amg4894@gmail.com
Where are you asserting rights? : United States
Which of these best describes the copyrighted work? : Photo
Name of the rights owner : Amanda Gecewicz
Provide a link to the copyrighted work. : https://youtu.be/X4qFHurw4n8
Describe your copyrighted work in the link you provided above. : The completed short film Blackhatter (2021), written and directed by me and registered in my name with the U.S. Copyright Office.
What type of content are you reporting? : Photo, video or post
Please provide links (URLs) leading directly to the specific content you are reporting. :
https://www.facebook.com/atkinsvisuals/posts/469291032293373:469291032293373
Link 2 : https://www.facebook.com/atkinsvisuals/posts/821918633022589:821918633022589
Link 3 : https://www.facebook.com/atkinsvisuals/posts/190943033304256:190943033304256
Link 4 : https://www.facebook.com/atkinsvisuals/posts/2903851516583849:2903851516583849
[Hidden] Describe why you are reporting this content. : Please select
Describe how you believe this content infringes your intellectual property rights, and provide any additional information that can help us understand your report. : I am the sole creator and copyright owner of the completed short film Blackhatter (2021). I wrote, directed, produced, financed, and own the motion picture in its entirety. The work is registered with the U.S. Copyright Office (Registration No. PAu 4-173-667; effective March 7, 2023).

The reported content reproduces and publicly displays my copyrighted film without my authorization, license, or permission. This use infringes my exclusive rights under U.S. copyright law.
Electronic signature : Amanda Gecewicz
violation type : INTELLECTUAL_PROPERTY
Reported Service : facebook_core

# EXHIBIT K

## WRITER ROLE CLARIFICATION

This document is intended to clarify the respective creative roles of **Amanda Gecewicz** and **Sarah Quinn** in connection with the short film titled **Blackhatter**, produced in 2021.

### 1. Project Authorship and Ownership

Amanda Gecewicz is the creator and sole author of *Blackhatter*, including its underlying concept, characters, story, and screenplay, and retains sole ownership of the Work and all associated intellectual property rights therein.

### 2. Sarah Quinn's Writing Contribution

Sarah Quinn contributed writing drafts and revisions to the screenplay at Amanda Gecewicz's request and under Amanda's creative supervision. Sarah's contributions were made in furtherance of Amanda's pre-existing creative vision for the project.

### 3. Creative Authority

Amanda Gecewicz retained and exercised final creative authority over all story, screenplay, and creative decisions related to *Blackhatter*.

### 4. Credit

Sarah Quinn is properly credited as a writer on *Blackhatter*. This credit reflects her contribution to the project but does not imply ownership or joint authorship of the Work or its underlying rights.

### 5. No Ownership Claim

Sarah Quinn represents that she does not claim, and has never claimed, any ownership or joint authorship interest in *Blackhatter* or its underlying intellectual property rights.

### 6. Scope and Use of Credit

Nothing in this clarification restricts Sarah Quinn from listing her writing credit for *Blackhatter* in her résumé, portfolio, or professional materials. This clarification applies solely to the 2021 short film *Blackhatter* released under Amanda Gecewicz's authorship and creative control, and does not affect any other versions or projects.

### 7. Governing Law

This clarification shall be governed by the laws of the State of Illinois.

This document is intended solely to clarify roles and memorialize the parties' understanding of their respective contributions. It does not revoke or alter existing on-screen credits.

**Effective as of February 18, 2026**

_Amanda Gecewicz_
Amanda Gecewicz

2/18/26
Date

_Sarah Quinn_
Sarah Quinn

03/03/2026
Date

# EXHIBIT L

**From:** "George J. Spathis" <gspathis@lplegal.com>
**Date:** April 13, 2026 at 3:27:30 PM CDT
**To:** Steve Baron <sbaron@bhhlawfirm.com>
**Subject: RE: GJS Final Demand Letter to Amanda Gecewicz (4.8.26).pdf [LP-ACTIVE.47724.47724.149613. FID1797818]**

Of course, I am generally available tomorrow after 10:30am until 4:30 pm, although full disclosure, the attached complaint was filed Friday afternoon (in part because one of the platforms advised Lakefront that filing would be necessary to reverse the takedown notices). The filing does not mean that we cannot discuss a resolution, but as you will see from the complaint, there is more to this matter than the takedown notices.

If you will agree to accept service, I will agree that no response to the complaint would be needed for 45 days which should give us ample time to explore a comprehensive settlement.

Let me know.

**From:** "George J. Spathis" <gspathis@lplegal.com>
**Date:** April 20, 2026 at 4:13:42 PM PDT
**To:** Steve Baron <sbaron@bhhlawfirm.com>
**Subject: RE: Lakefront Pictures LLC, et al. v. Gecewicz  CONFIDENTIAL - Pursuant to FRE 408 [LP-ACTIVE.47724.47724.149613.FID1797818]**

**<u>Solely for Purposes of Settlement:</u>**
Steve:

Your client's counterproposal is a non-starter and would suggest there is little utility in spending energy at this time discussing settlement since we are chasms apart. At this time, please advise whether you will accept service on Ms. Gecewicz's behalf, and whether you are representing her for purposes of the subpoena already served upon her in *Lakefront Pictures, LLC et al., v. Ancel, et al,* with respect she claims to have no responsive documents.

I also see little utility in addressing/refuting the accompanying points you offered to justify your client's settlement position (including that she acted in "good faith"), although I want to clarify what appears to be a glaring misconception on your/your client's part.  The new accounts created through which Lakefront is attempting to promote its business and its new movie are merely stop-gap accounts with few followers.  The inability to access the wrongly disabled mature accounts--with 10,000+ followers—has already caused substantial harm (the disabling of accounts has even hindered/or prevented management of accounts that have remained open) and will continue to cause substantial harm to Lakefront (particularly during the critical promotional period of its new film) and its principals, for which well seek recovery from your client.  We will not even entertain any settlement discussions unless and until the take-down notices are retracted and all accounts are fully functional.

**From:** Steve Baron
**Sent:** Friday, May 1, 2026 5:07 PM
**To:** 'George J. Spathis' <gspathis@lplegal.com>
**Subject:** RE: Lakefront Pictures LLC, et al. v. Gecewicz CONFIDENTIAL - Pursuant to FRE 408 [LP-ACTIVE.47724.47724.149613.FID1797818]

George,
I am not authorized to accept service on behalf of Ms. Gecewicz, and I do not represent her on the subpoena.
I am sorry that your clients will not entertain further discussions toward settlement absent unilateral action by my client.  Typically, that's not how settlement negotiations occur.  The only account we are presently aware has been disabled is Lakefront's Instagram account.  Had you contacted me in January after I sent my letter to you, we might have been able to resolve all of this expeditiously. Amanda will not rescind any takedown notices or contact Instagram outside the context of a comprehensive settlement agreement, nor will she make any admission of fault.
If your clients change their mind on discussing a comprehensive settlement, let me know.
Steve
**Steven L. Baron**
sbaron@BHHLawFirm.com
Direct 312.741.1027 | Main 312.741.1030
150 South Wacker Drive, Suite 2400
Chicago, IL 60606

# EXHIBIT M

On Apr 1, 2023, at 5:10 PM, Amanda Gecewicz <amg4894@gmail.com> wrote:

Jennifer,

I hired you to produce Blackhatter in 2021. Over the course of time, you have bullied me, harassed me, staked me, and lied to me. I had hopes after our previous conversation that you would respect personal and professional boundaries of mine, which you haven't. You make me feel unsafe and uncomfortable and I'm demanding that this stops. Here are a few things you have said/done to me:

I've tried to make and maintain the peace. I've tried to approach you as gently as possible. I've done everything I could to rectify things so they didn't escalate, but you continue disrespect me. With all of that being said, I don't want to see you, speak to you, or be affiliated with you ever again. You have crossed the line and for my own safety, I'm demanding you leave me alone. I don't give you permission to post about me or MY film Blackhatter. The film, script, and likeness of the character have all been copywritten and protected in my name. If you read the "contract" that you sent for Blackhatter, you will also notice that it was void from the very beginning… you spelled my name wrong AND it says "this agreement is valid through Wednesday Sept 22, 2021, at 5pm. There is a substantial paper trail proving this. Just check your email. I have no further obligation to be affiliated with you in any capacity or Lakefront Pictures. It pains me that things had to end like this, but you made the decision yourself by behaving so unprofessionally.

**EXHIBIT N**

 **Amanda**
May 14, 2026, 10:34 PM (UTC-04:00)

Hello,

I am following up regarding Case #403933428 involving Jennifer A. Goodman Karum's website. Wix previously disabled the site following my April 2 DMCA takedown notice concerning unauthorized references to my copyrighted film, Blackhatter. After the website was later restored by Wix, Ms. Karum uploaded an updated résumé/credits document again referencing Blackhatter without authorization. Her attached résumé includes the reference, which I have attached below for review. The work is registered in my name with the U.S. Copyright Office under Registration No. PAu 4-173-667.

A formal termination and revocation letter regarding any continued use or association with the project was sent on January 27, 2026. Despite the prior takedown and notice history, the project is once again being referenced on her website in professional/promotional materials. I respectfully request review and removal of the newly reuploaded infringing reference. I also specifically request that my personal email address and mailing address remain private and not be disclosed to the website owner.

Thank you,

Amanda Gecewicz

| | | | | |
|---|---|---|---|---|
| THE UNSEEN | FEATURE | WRITER, PRODUCER, LINE PRODUCER, COORDINATOR, LOCATIONS DIRECTOR & COORDINATOR | THE CURSE, LLC | 2022 |
| LITTLE MUS. DAYCARE | PROMO VIDEO | WRITER, PRODUCER, DIRECTOR | LAKEFRONT PICTURES | 2021 |
| 94 ACTOR SCENES | ANTHOLOGY | | LAKEFRONT PICTURES | 2021 |
| BLACKHATTER | SHORT | PRODUCER, COORDINATOR, DIRECTOR CONSULT | LAKEFRONT PICTURES | 2021 |
| HAPPILY MARRIED WOMAN | SHORT | PRODUCER, LINE PRODUCER & COORDINATOR | LAKEFRONT PICTURES | 2021 |
| PICTURES ONLY | SHORT | PRODUCER & m PROD. COORDINATOR | LAKEFRONT PICTURES | 2021 |
| 7-11 JFG EVENT | SOCIAL MEDIA | AV WRITER/PRODUCER/DIRECTOR | MAGIC BULLET MEDIA | 2021 |

2

Show in Forbes Link -- Jennifer Karum in Forbes!  - www.lakefrontpictures.com for media/press. Continues next page

Acting Resume and further breakdown information available upon request.
Please continue to 2nd page for specific Producing, Coordinating and Writing experience

## *5/14 Blackhatter Reference



## *5/21 Blackhatter Reference (Spelled Incorrectly)

**EXHIBIT O**

Professional social media pages actively used/managed by Plaintiffs

https://www.facebook.com/lakefrontpictures

https://www.instagram.com/asnowboundchristmas/

https://www.facebook.com/people/A-Snowbound-Christmas/61574149506472/

https://www.instagram.com/lakefrontactorreels/

https://www.instagram.com/lakefrontfilminstitute/

https://www.facebook.com/lakefrontcreativegroup

https://www.instagram.com/lakefrontcreativegroup

https://www.facebook.com/TheUnseenFeatureFilm/

https://www.instagram.com/unseenmovie/

https://www.youtube.com/channel/UCmI9VcdY2zmqh-wFezO0B5A

