



FILED
6/4/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| **LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and RYAN ATKINS,** <br><br> Plaintiffs, <br><br> v. <br><br> **AMANDA GECEWICZ,** <br><br> Defendant. | Case No. 1:26-cv-04038 <br><br> Hon. Judge Thomas M. Durkin <br><br> Hon. Mag. Judge Gabriel A. Fuentes |

## <u>DEFENDANT AMANDA GECEWICZ'S ANSWER AND AFFIRMATIVE DEFENSES</u>

## <u>TO PLAINTIFFS' COMPLAINT</u>

Defendant Amanda Gecewicz, appearing pro se, answers Plaintiffs' Complaint as follows:

### NATURE OF THE ACTION

1. This action arises from Gecewicz's wrongful assertion of exclusive ownership over a motion picture and related works that were, in fact, created collaboratively with Plaintiffs.

**ANSWER:** Defendant denies the allegations contained in Paragraph 1 and specifically denies that her assertion of ownership was wrongful and that Plaintiffs possess ownership rights in the motion picture or related works.

2. Gecewicz has improperly registered copyrights in her own name, purposefully omitting the known authors/co-authors, and used those improperly obtained registrations to issue false takedown notices under the Digital Millennium Copyright Act, as part of a smear campaign against Karum and Lakefront.

**ANSWER:** Defendant denies the allegations contained in Paragraph 2. Defendant specifically denies that she improperly registered copyrights, purposefully omitted known authors or co-authors, submitted false DMCA takedown notices, or engaged in any smear campaign against Plaintiffs.

3. Gecewicz has also repeatedly and systematically breached her contract with Lakefront and has taken steps (in conspiracy with others) to tortiously interfere with Lakefront's business, which caused and continues to cause significant harm to Plaintiffs.

**ANSWER:** Defendant denies the allegations contained in Paragraph 3. Defendant specifically denies that she repeatedly or systematically breached any contract with Plaintiffs, denies conspiring with any person to interfere with Plaintiffs' business, denies tortiously interfering with Plaintiffs' business, and denies that her actions caused any harm to Plaintiffs.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., the Digital Media Copyright Act, 17 U.S.C. § 512 and Lanham Act, 15 U.S.C. §1125(a), and pendant jurisdiction pursuant to 28 U.S.C. § 1367 as to the remaining claims.

**ANSWER:** Defendant admits the allegations contained in Paragraph 4.

5. This Court has personal jurisdiction over Gecewicz, a citizen of and domiciled in Illinois, who engaged in conduct in Illinois that give rise to and caused injury in Illinois.

**ANSWER**: Defendant admits that she is a citizen of Illinois. Defendant denies the remaining allegations contained in Paragraph 5.

6. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER**: Defendant admits that venue is proper in this District.

## THE PARTIES

7. Plaintiff Karum is an individual who is a citizen of and domiciled in Illinois, who works and resides in Cook County, Illinois. Karum is neuro-diverse, and on the autism spectrum. Through theater, Karum developed a sense of confidence and belonging that eventually led her to study theater and dance in college, and she pursued a professional career in films. While on set, she carefully studied and engaged with directors, assistant directors and producers to learn about all aspects of the film industry and has parlayed her experiences into a career as an actor, writer and producer. Karum uses her maiden name, Goodman in connection with her acting roles.

**ANSWER:** Defendant admits that Plaintiff Karum is an individual. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 7 regarding Plaintiff Karum's domicile, residence, personal background, medical condition, education, career history, and personal experiences, and therefore denies the same.

8. Plaintiff Atkins is an individual who is a citizen of and domiciled in the State of Illinois, who works and resides in Cook County, Illinois. Karum met Atkins when she auditioned for a role on a project he was spearheading. Atkins had film credits as a cinematographer, director, and editor over the course of several years in the industry. Karum and Atkins quickly developed a strong synergy, and they began working together on various projects, eventually co-founding Lakefront, a production company with the mission of supporting and promoting other neuro-diverse artists and giving voice to a group that is underrepresented in the film industry.

**ANSWER:** Defendant admits that Plaintiff Atkins is an individual. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 8 regarding Plaintiff Atkins' domicile, residence, personal background, career history, relationship with Plaintiff Karum, and the circumstances surrounding the formation and mission of Lakefront Pictures, LLC, and therefore denies those allegations.

9. Plaintiff Lakefront is a limited liability company organized and existing under the laws of the state of Illinois of which Karum and Atkins are its sole members and Managers. Lakefront, Karum and Atkins may collectively be referred to as "Plaintiffs."

**ANSWER:** Defendant admits the allegations contained in Paragraph 9.

10. Defendant Gecewicz is an individual who is a citizen of and domiciled in the State of Illinois, who on information and belief resides in Lake County, Illinois. Gecewicz holds herself out as a director, writer and producer, and as such, competes with Lakefront.

**ANSWER:** Defendant admits that she is an individual and a citizen of Illinois and that she holds herself out as a writer, director, and producer. Defendant specifically denies that she competes with Plaintiff Lakefront. Defendant otherwise denies the allegations contained in Paragraph 10.

## ALLEGATIONS COMMON TO ALL COUNTS

### *Development of the Film, Blackhatter*

11. In or about the fall of 2021, Gecewicz met with Karum (with whom she had previously worked) about developing a short film around an idea and story line about a criminal figure who encounters a dark mysterious figure who offers him a chance at redemption, but at a significant price. The film eventually would be titled *Blackhatter.*

**ANSWER:** Defendant admits that she met with Plaintiff Karum in or about the fall of 2021 regarding the film project that ultimately became Blackhatter. Defendant denies the allegations to the extent they suggest that Blackhatter existed only as an undeveloped idea or storyline at that time. Defendant further states that the screenplay underlying Blackhatter was substantially completed in 2015 while Defendant was a student at DePaul University and was later revised

during development and production. Defendant otherwise denies the allegations contained in Paragraph 11.

12. Gecewicz executed a "Production Agreement" with Lakefront dated September 21, 2021, pursuant to which Lakefront was engaged as the Production Company for the film, with sweeping responsibilities and authority for all aspects of the production, with Karum and Atkins being also hired as the film's "main producers." A true and correct copy of the Production Agreement is attached as **Exhibit A**.

**ANSWER:** Defendant admits that she executed a Production Agreement with Plaintiff Lakefront dated September 21, 2021 and that the Agreement is attached to the Complaint as Exhibit A. Defendant denies the allegations to the extent they characterize Lakefront as having sweeping responsibilities and authority over all aspects of production. Defendant further denies that the Agreement granted Lakefront exclusive authority or control over the project. Defendant otherwise denies the allegations contained in Paragraph 12.

13. The monetary compensation paid to Lakefront, Karum and Atkins in connection with the project was below market, but Lakefront, which was in its early stages of development, as well as Karum and Atkins valued the Production Company and Producer credits and promotional exposure to which Plaintiffs were assured under the Production Agreement for their respective portfolios.

**ANSWER:** Defendant admits that the parties agreed to the compensation set forth in the Production Agreement. Defendant denies the allegations to the extent they suggest that Defendant dictated the compensation terms or that Plaintiffs accepted the project on terms other than those they proposed and voluntarily agreed to. Defendant lacks sufficient knowledge or information to form a belief as to Plaintiffs' subjective motivations, expectations, or valuation of credits and promotional exposure and therefore denies those allegations.

14. To that end, the Production Agreement, Gecewicz expressly agreed:
to provide Lakefront "IMDB credit, First Position Title Credit with Lakefront Pictures animated logo on both intro and outro credits, and to promote Lakefront Pictures as the Production Company on any and all Publicity relating to 'Blackhatter' in perpetuity." (Agreement, par. 1); To provide Karum and Atkins "individual IMDB credit, Single Card Title Second and Third Position in the Opening Titles of the Film and outro credits, and…to promote Ryan Atkins and Jennifer Karum as the Producers on any and all Publicity relating to 'Blackhatter' in perpetuity." (*id*., par. 2); that "Ryan Atkins and Jennifer Karum and Lakefront Pictures, LLC will be attached to the project from Development through all post-production, festival submissions, distribution pitches and up and through negotiations for distribution…" (*id*., par. 8); To include Lakefront Pictures, LLC, Ryan Atkins and Jennifer Karum "in any and all pitch materials, publicity, marketing, social media and press kits for Blackhatter, or any name under the current story with the previous title Blackhatter." (*id*., par. 19); and to invite Ryan Atkins and Jennifer Karum "to the premiere events, festivals, publicity events and pitch meetings related to 'Blackhatter'…" (*id*., par. 23).

**ANSWER:** Defendant admits that the Production Agreement contains the provisions quoted in Paragraph 14. Defendant denies any characterization of those provisions that is inconsistent with the terms of the Agreement, the parties' subsequent conduct, or the termination of the parties' relationship. Defendant otherwise denies the allegations contained in Paragraph 14.

15. Pursuant to the Agreement, Gecewicz further agreed not to slander Lakefront,

Atkins and/or Karum in any manner, whether purporting to express fact or opinion, and that obligation would survive the completion of the project and continue into perpetuity. (*Id*., par. 20).

**ANSWER:** Defendant admits that the Production Agreement contains the provision referenced in Paragraph 15. Defendant denies any characterization of that provision that is inconsistent with applicable law, public policy, or the parties' subsequent conduct. Defendant otherwise denies the allegations contained in Paragraph 15.

16. Notably, Lakefront did not assign any intellectual property rights to Gecewicz under the Production Agreement. To the contrary, under the Production Agreement, Gecewicz merely retained ownership of the profit rights with respect to the film, subject to certain back-end participation rights to which Lakefront would remain entitled.

**ANSWER:** Defendant denies the allegations contained in Paragraph 16. Defendant specifically denies that she merely retained profit rights in the film. Defendant further denies any characterization of the Production Agreement that is inconsistent with Defendant's ownership of the project and underlying intellectual property. Defendant otherwise denies the allegations contained in Paragraph 16.

17. Lakefront's worked extensively to develop a script for the film, the first draft of which was prepared by Lakefront's paid intern (Sarah Quinn). While the intern's work qualified as work-for-hire, she expressly transferred any and all rights to the script to Lakefront for value on September 26, 2021.

**ANSWER:** Defendant denies the allegations contained in Paragraph 17. Defendant specifically denies that the first draft of the screenplay was prepared by Lakefront or its intern. Defendant

further states that the screenplay underlying Blackhatter was developed by Defendant prior to her engagement of Lakefront and that any subsequent revisions were made to an existing screenplay. Defendant further denies that Lakefront acquired ownership rights in Blackhatter through Sarah Quinn or otherwise. Defendant otherwise denies the allegations contained in Paragraph 17.

18. Karum substantially revised and eventually finalized the script, with little meaningful input from Gecewicz. At no time did Lakefront transfer or assign any interest in the script/screenplay it developed to Gecewicz. In fact, the final screenplay bears a Lakefront copyright symbol.

**ANSWER:** Defendant denies the allegations contained in Paragraph 18. Defendant specifically denies that Plaintiff Karum substantially revised or finalized the screenplay with little meaningful input from Defendant. Defendant further states that Defendant developed the screenplay and provided the material creative direction and feedback regarding any subsequent revisions. Defendant denies that the presence of a Lakefront copyright symbol establishes ownership of the screenplay or intellectual property rights therein. Defendant otherwise denies the allegations contained in Paragraph 18.

19. With a screenplay in hand, Lakefront then began preparing for filming, including preparing storyboards, developing character profiles, designing wardrobe mock-ups, scouting for film locations, serving as casting director and hiring cast and crew, including a gun armor.

**ANSWER:** Defendant admits that Plaintiff Lakefront assisted with certain production-related activities, including location scouting and assisting with the hiring of cast, crew, and a firearms armorer. Defendant denies the remaining allegations contained in Paragraph 19, including the

allegations that Lakefront prepared the film's storyboards, developed character profiles, or designed wardrobe mock-ups.

20. Lakefront also oversaw all of the filming, and Atkins was Director of Cinematography on the project. Nearly all of the filming of *Blackhatter* occurred over a two-day period in mid-November 2021. While Gecewicz insisted on directing the film (her first attempt at directing) she needed near constant handholding during the first day of filming from a seasoned director, Vincent Shade, who was hired as a director consultant.

**ANSWER:** Defendant admits that Plaintiff Atkins served as Director of Photography on the project and that the principal photography for Blackhatter occurred primarily during a two-day period in November 2021. Defendant denies that Lakefront oversaw all filming. Defendant further denies that Blackhatter was Defendant's first attempt at directing or that Defendant required near constant assistance or direction from Vincent Shade or any other individual during filming. Defendant further states that Plaintiff Karum and Defendant had previously worked together during the summer of 2021 on Defendant's film The Last Laugh, which Defendant directed and in which Plaintiff Karum appeared as an actor. Defendant otherwise denies the allegations contained in Paragraph 20.

21. During the second day of filming, Gecewicz was still largely overwhelmed by the responsibilities of the position, and ceded second day direction almost entirely to Karum, who kept the production on track and on budget. Lakefront and Atkins were also involved throughout the post-production editing process.

**ANSWER:** Defendant denies the allegations contained in Paragraph 21 that Defendant was overwhelmed by the responsibilities of directing or that Defendant ceded direction of the second

day of filming to Plaintiff Karum. Defendant admits that Plaintiff Lakefront participated in aspects of the post-production process. Defendant otherwise denies the allegations contained in Paragraph 21.

22. The collaborative effort yielded a finished product with which all parties were proud, and Lakefront, Karum and Atkins were each given the appropriate credits to which they were respectively entitled by the terms of the Production Agreement.

**ANSWER:** Defendant admits the allegations contained in Paragraph 22.

23. For her part, Gecewicz insisted that with respect to the on-screen credits and film poster, she receive credit as the film's Director, relegating the roles of both Vincent Shade and Karum (who actually deserved at least co-director credit) to "Director Consultants," to which Karum and Shade consented.

**ANSWER:** Defendant denies the allegations contained in Paragraph 23. Defendant specifically denies that Plaintiff Karum or Vincent Shade were entitled to co-director credit on Blackhatter. Defendant further denies that Plaintiff Karum directed the film or that Defendant improperly withheld co-director credit from any individual. Defendant admits that Vincent Shade and Plaintiff Karum were ultimately credited as Director Consultants but denies any characterization of those credits that is inconsistent with the actual roles performed by those individuals on the project. Defendant otherwise denies the allegations contained in Paragraph 23.

24. Similarly, because she originated the idea for *Blackhatter,* Gecewicz insisted that with respect to the on-screen credits and film poster, that she should also receive writer credit (with Sarah Quinn), with Karum credits as the "Story Editor," to which Lakefront and Karum also consented

(although Lakefront never transferred any intellectual property rights to the script or screenplay to Gecewicz.

**ANSWER:** Defendant admits that she received writer credit on Blackhatter and that Plaintiff Karum received a Story Editor credit. Defendant denies any allegation that Plaintiff Karum originated, authored, or edited the screenplay or that Plaintiff Lakefront owned the screenplay and failed to transfer intellectual property rights therein to Defendant. Defendant further states that the screenplay underlying Blackhatter was created and developed by Defendant prior to Plaintiff Lakefront's involvement in the project and that Plaintiff Karum's Story Editor credit was not based upon originating, writing, or editing the screenplay. Defendant further states that Plaintiff Karum's Story Editor credit was assigned without any transfer of ownership rights in the screenplay and did not confer any ownership interest in Blackhatter or its underlying intellectual property. Defendant otherwise denies the allegations contained in Paragraph 24.

25. The original film poster (below) reflects the collective agreement as to the on-screen credits and film poster credits:

**ANSWER:** Defendant admits that the original film poster reflected the credits identified in Paragraph 25 and that those credits were used in connection with the project at that time.

26. Although there was subsequent tension and discussion between Gecewicz and Karum, as to whether Karum should be entitled to co-director credit on IMDB, the parties ultimately decided that Gecewicz would be listed as the only director, while Karum would receive director- consultant credit (in addition to credit as a Producer, Story Editor, Production Coordinator, and Casting). There were never any further discussion or debate as to proper credits with respect to the *Blackhatter* film.

**ANSWER:** Defendant admits that there were discussions regarding whether Plaintiff Karum should receive co-director credit and that Defendant was ultimately credited as the sole director while Plaintiff Karum received Director Consultant credit in addition to other credits. Defendant denies the allegation that there were never any further discussions, disputes, or disagreements regarding credits associated with Blackhatter. Defendant further states that disputes regarding Plaintiff Karum's claimed credits and representations concerning her role in the project continued after production. Defendant otherwise denies the allegations contained in Paragraph 26.

27. Lakefront, Karum and Atkins vigorously promoted the film through their respective social media accounts, as well as their roles as producers. Gecewicz never made any objection to any such promotion at the time.

**ANSWER:** Defendant admits that Plaintiff Lakefront, Plaintiff Karum, and Plaintiff Atkins promoted the film through social media and in connection with their roles on the project. Defendant denies the allegation to the extent it suggests that Defendant never objected to all forms of promotion or public representations concerning Blackhatter. Defendant otherwise denies the allegations contained in Paragraph 27.

28. The film won a festival award, and (ironically) Gecewicz was recognized for her "directing." Gecewicz lauded Lakefront and its team for their work on the award-winning film.

**ANSWER:** Defendant admits that Blackhatter received a festival award, that Defendant received recognition as the film's director, and that Defendant publicly praised Plaintiff Lakefront and members of its team in connection with their contributions to the completed film. Defendant denies any characterization of such statements that is inconsistent with the parties' subsequent

disputes or Defendant's later experiences with Plaintiffs. Defendant otherwise denies the allegations contained in Paragraph 28.

29. And while neither Lakefront, Karum nor Atkins have received any back-end royalty, they benefited from their credits, promoting their work on *Blackhatter* on their website, in social media, in demo reels, behind-the-scenes still photography and related promotional materials stored or displayed online. Again, Gecewicz made no seasonable objections to any such promotion of the film, from which she benefitted.

**ANSWER:** Defendant admits that Plaintiff Lakefront, Plaintiff Karum, and Plaintiff Atkins used their credits and involvement with Blackhatter in connection with websites, social media, demo reels, behind-the-scenes materials, and other promotional content. Defendant denies that she made no reasonable objections to such promotional activities and specifically denies any allegation that she acquiesced to inaccurate or misleading representations regarding the parties' respective roles on the project. Defendant further denies any characterization of the project as generating back-end royalties payable to Plaintiffs. Defendant otherwise denies the allegations contained in Paragraph 29.

*Jordan Ancel Declares War on Karum and Lakefront*

**ANSWER TO PARAGRAPHS 30–51:** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraphs 30 through 51, which concern individuals, events, and a film project in which Defendant had no involvement, and therefore denies those allegations.

52. Rose, in turn, rallied her friend, Gecewicz, to join the Ancel-led campaign to malign and smear Karum and Lakefront, and as set forth below, Gecewicz was more than willing to take up the charge, posting on Facebook in support of Ancel, and slandering and maligning Karum who she falsely accused of bullying, harassing and cyber-stalking her and her family.

**ANSWER:** Defendant denies the allegations contained in Paragraph 52. Defendant specifically denies that she joined any campaign to malign or smear Plaintiffs, denies that Candice Rose rallied Defendant to participate in any such effort, denies that Defendant posted on social media in support of any alleged campaign against Plaintiffs, and denies falsely accusing Plaintiff Karum of bullying, harassment, cyber-stalking, or any other misconduct. Defendant otherwise denies the allegations contained in Paragraph 52.

*Gecewicz's Actionable Conduct*

53. Following Ancel's and Rose's initial call to arms, Gecewicz continued a sustained campaign of slander and interference maliciously aimed at Karum and Lakefront.

**ANSWER:** Defendant denies the allegations contained in Paragraph 53. Defendant specifically denies that she engaged in any campaign of slander or interference directed at Plaintiffs. Defendant further denies that any statements she made regarding Plaintiffs were false, malicious, or part of a coordinated effort to harm Plaintiffs. Defendant otherwise denies the allegations contained in Paragraph 53.

54. Without regards of the terms of the Production Agreement prohibiting slander, Gecewicz continued to post malicious allegations against Lakefront and Karum on social media, including the following post laden with outright lies about harassment of her and her family:

**ANSWER:** Defendant admits that she made the social media post referenced in Paragraph 54. Defendant denies that the post contained malicious allegations, outright lies, or slander. Defendant further denies that the post was part of any campaign to target Plaintiffs and states that the post reflected Defendant's understanding of and reaction to events and communications involving Defendant and her family. Defendant otherwise denies the allegations contained in Paragraph 54.

55. Gecewicz's false and disparaging posts caused extensive reputational harm to both Lakefront and Karum that caused or contributed to multiple abrupt project cancellations that had been scheduled, and interfering with its established relationship with crew members who were forced to distance themselves from Lakefront for fear of repercussions and the risk of being blackballed.

**ANSWER:** Defendant denies the allegations contained in Paragraph 55. Defendant specifically denies that her statements regarding Plaintiffs were false or disparaging. Defendant further denies that any statements made by Defendant caused the alleged reputational harm, project cancellations, interference with business relationships, or other damages alleged by Plaintiffs. Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiffs' allegations regarding the reasons for any actions taken by third parties and therefore denies the same. Defendant otherwise denies the allegations contained in Paragraph 55.

56. Then, without notice to Lakefront, and without regard to the terms of the Production Agreement, and the extensive work by Lakefront to turn her idea into an actional film, Gecewicz applied for copyrights, falsely claiming sole authorship of the "entire motion picture, direction, script/screenplay," pursuant to which she received—solely in her name—Copyright Registration

Number PAU 4173667 for the *Blackhatter* Motion Picture. Gecewicz similarly claimed sole authorship with respect to the project to obtain—again solely in her own name—a visual materials copyright (Registration Number VAU001499795) and dramatic works copyright (Registration Number TXU002363749).

**ANSWER:** Defendant denies the allegations contained in Paragraph 56. Defendant specifically denies that her copyright registrations were false or obtained in disregard of the Production Agreement. Defendant further denies that Plaintiff Lakefront transformed Defendant's idea into the motion picture or that Defendant improperly claimed authorship of the project. Defendant states that the Production Agreement expressly recognized Defendant's ownership and creative authority with respect to the project. Defendant further denies any allegation that the referenced copyright registrations were improperly obtained. Defendant otherwise denies the allegations contained in Paragraph 56.

57. At Rose's urging, Gecewicz also called Sarah Cayce, to get Karum disinvited from a Chicago film industry networking event, telling Cayce that she and Roise did not "feel safe" around Karum.

**ANSWER:** Defendant denies the allegations contained in Paragraph 57. Defendant specifically denies that she called Sarah Cayce, requested that Plaintiff Karum be disinvited from any event, or communicated to Sarah Cayce that Defendant did not feel safe around Plaintiff Karum. Defendant further states that she does not know and has never met Sarah Cayce. Defendant otherwise denies the allegations contained in Paragraph 57.

58. Prompted by Rose and/or Ansel, Gecewicz, an alum of DePaul University, also secretly called the University, from which Lakefront had consistently recruited interns, and persuaded the

University to discontinue its internship pipeline to Lakefront, bragging to Rose inthe process: "I told them to keep my name anonymous as it could cause serious issues for me,"tacitly acknowledging the wrongful nature of her conduct.

**ANSWER:** Defendant admits that she contacted DePaul University and requested that her identity not be disclosed. Defendant denies that she was prompted by Rose, Ancel, or any other third party to do so. Defendant further denies that her communication with DePaul University was secret, wrongful, or intended to improperly interfere with Plaintiffs' activities. Defendant states that any request for anonymity was based on Defendant's personal safety concerns and was not an acknowledgment of wrongdoing. Defendant further states that she communicated only her own experiences and concerns and, as a DePaul University alumna, contacted the University regarding matters that personally affected her. Defendant otherwise denies the allegations contained in Paragraph 58.

59. Without regard to the terms of the Production Agreement, and specifically the non-disparagement provision that survived the conclusion of the project, Gecewicz posted the following Google negative review, spouting her continued falsehoods:

**ANSWER:** Defendant admits that she posted and later amended the Google review referenced in Paragraph 59. Defendant denies that the review contained falsehoods. Defendant further denies that the review was posted in disregard of the Production Agreement or for any improper purpose. Defendant states that the review reflected Defendant's personal experiences and opinions concerning Plaintiffs and was amended after Defendant observed continued public representations regarding Plaintiffs' role in the project with which Defendant disagreed. Defendant otherwise denies the allegations contained in Paragraph 59.

60. In fact, Karum never stalked or harassed Gecewicz, and never attempted to contact any member of her family.

**ANSWER:** Defendant denies the allegations contained in Paragraph 60. Defendant specifically denies that Plaintiff Karum never stalked, harassed, or attempted to contact members of Defendant's family and further denies that Defendant's concerns regarding such conduct were fabricated or unfounded. Defendant otherwise denies the allegations contained in Paragraph 60.

61. Gecewicz also conspired with Winter Davis, then an employee of the Independent Film Alliance—Chicago, seeking the expulsion of Lakefront because she otherwise felt unsafe to join IFA, and Gecewicz further directed or encouraged Davis to contact Google (which she did) to remove Lakefront's business profile, which it did (although it has since been restored).

**ANSWER:** Defendant denies the allegations contained in Paragraph 61. Defendant specifically denies that she conspired with Winter Davis, sought the expulsion of Plaintiffs from the Independent Film Alliance–Chicago, or directed, encouraged, or requested that Winter Davis or any other person contact Google regarding Plaintiffs' business profile. Defendant further states that she does not know and has never met Winter Davis. Defendant otherwise denies the allegations contained in Paragraph 61.

62. Moreover, without regard to the term of the Production Agreement, Gecewicz uploaded an updated version of the film that eliminates any and all credit to Lakefront (Production Company), Karum (Producer, Story Editor, Production Coordinator, and Casting) and Atkins (Producer, Director of Photography, Sound Design and Colorist). The film is otherwise exactly the same as the one she originally uploaded with proper credit to the Plaintiffs.

**ANSWER:** Defendant admits that she uploaded a revised version of the film that removed the credits referenced in Paragraph 62. Defendant denies that such action was taken without regard to the Production Agreement or under the circumstances alleged by Plaintiffs. Defendant further states that the decision was made following a lengthy dispute between the parties concerning, among other things, Plaintiffs' conduct, continued contact with Defendant, interference with projects unrelated to Blackhatter, and disagreements regarding credits and public representations concerning the film. Defendant otherwise denies the allegations contained in Paragraph 62.

63. Gecewicz similarly revised the film's promotional poster and IMDB listing to similarly remove all to Lakefront, Karum and/or Atkins, and on IMDB gave herself credits as a writer and the only producer (calling herself an Executive Producer).

**ANSWER:** Defendant admits that she revised certain promotional materials and IMDb credits relating to Blackhatter, including the poster and IMDb listing referenced in Paragraph 63. Defendant further admits that such revisions occurred after Defendant's January 27, 2026 termination letter sent to Plaintiffs and reflected Defendant's understanding that the parties' working relationship had ended and that Plaintiffs were no longer involved with the project. Defendant denies that such actions were improper and otherwise denies the remaining allegations contained in Paragraph 63.

64. Armed with the copyright notices she procured by fraud, and having wrongfully cleansed Plaintiffs' credit from the film, Gecewicz unleashed a torrent of takedown notices under the Digital Media Copyright Act to numerous online platforms (including Meta/Facebook, Instagram, Google, YouTube, WIX and Staff Me Up), targeting Plaintiffs for their alleged unauthorized use of copyrighted materials over which Gecewicz again falsely claimed "sole

ownership," without including or referencing the Production Agreement, which would have undermined or eviscerated her claim of sole ownership and unauthorized use.

**ANSWER:** Defendant admits that she submitted copyright infringement notices to certain online platforms concerning materials associated with Blackhatter. Defendant denies that any copyright registration was procured by fraud, denies that any takedown notice was wrongful, and denies that she knowingly made any false claim of ownership. Defendant further states that she held a good-faith belief in her ownership rights and authority to submit such notices based upon contemporaneous documentation and the parties' written agreements. Defendant further states that the notices were submitted following Defendant's January 27, 2026 termination letter and Plaintiffs' failure to respond or comply with the requests set forth therein. Defendant otherwise denies the allegations contained in Paragraph 64.

65. Based upon the purposefully misleading takedown notices, the images, posts and photographs about which Gecewicz complained were removed by or at the direction of Meta/Facebook, Instagram, Google, YouTube, and WIX, and Lakefront's Instagram and YouTube accounts were suspended.

**ANSWER:** Defendant admits that certain content identified in Defendant's copyright infringement notices was removed by online platforms and that certain Plaintiff accounts were suspended or otherwise affected by platform enforcement actions. Defendant denies that any takedown notice submitted by Defendant was purposefully misleading or otherwise improper. Defendant otherwise denies the allegations contained in Paragraph 65.

66. The suspension of these accounts is particularly perilous for Lakefront as these platforms have been among the most furtive means of promotion of its business.

**ANSWER:** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 66 regarding Plaintiffs' business operations, promotional activities, and reliance on social media platforms, and therefore denies the same.

67. Moreover, the timing was particularly damaging, as Lakefront recently completed filming of a new feature film for which advance payment distribution deals require vigorous social media promotion.

**ANSWER:** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 67 regarding Plaintiffs' feature film, distribution agreements, promotional requirements, or alleged damages, and therefore denies the same.

68. Lakefront made a demand in writing that Gecewicz immediately rescind the takedown notices to ameliorate the threat of harm, but Gecewicz remained defiant and ignored the demand.

**ANSWER:** Defendant admits that Plaintiffs made a written demand regarding the copyright infringement notices on April 8, 2026. Defendant denies that she remained defiant or ignored the demand. Defendant further states that, the day after, counsel for the parties communicated regarding a potential amicable resolution of the dispute. Defendant further states that she did not submit additional copyright infringement notices following those communications. Defendant otherwise denies the allegations contained in Paragraph 68.

## COUNT I

**(DECLARATORY JUDGMENT AS TO VALIDITY OF GECEWICZ'S COPYRIGHTS)**

69. Lakefront repeats and realleges the allegations of paragraphs 1-68.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 68 as though fully set forth herein and otherwise denies any allegations inconsistent therewith.

70. As set forth above, Gecewicz made material misrepresentations in her applications submitted to the U.S. Copyright Office, vastly overstating and outright lying about her rights of "authorship."

**ANSWER:** Defendant denies the allegations contained in Paragraph 70.

71. Gecewicz made her material misrepresentations with actual knowledge that her applications contained false information.

**ANSWER:** Defendant denies the allegations contained in Paragraph 71.

72. On information and belief, if the Copyright Office had been apprised of and provided a copy of the Production Agreement, it would *not* have issued copyrights to Gecewicz, or at the very least, would not have issued copyrights that purport to recognize her as sole author.

**ANSWER:** Defendant denies the allegations contained in Paragraph 72.

73. There is an actual case in controversy as to whether Copyrights bearing Registration Numbers PAU 4173667, VAU001499795, and TXU002363749 (collectively, the "Copyrights") are invalid and should be revoked or revised based upon Gecewicz's wrongful and deceptive conduct.

**ANSWER:** Defendant denies the allegations contained in Paragraph 73.

## COUNT II

## (DECLARATORY JUDGMENT AS TO LAKEFRONT'S COPYRIGHTS WITH RESPECT TO *BLACKHATTER*)

74. Lakefront repeats and realleges the allegations of paragraphs 1-73.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 73 as though fully set forth herein and otherwise denies any allegations inconsistent therewith.

75. There is an actual case in controversy as to whether Lakefront is the sole and/ or a joint author of the script/screenplay for *Blackhatter* for purposes of copyright.

**ANSWER:** Defendant denies the allegations contained in Paragraph 75.

76. There is also an actual case in controversy as to whether Lakefront's considerable contribution to the *Blackhatter* film qualifies it to claim sole authorship (as that term is used in copyright) over the Film, as a dramatic work and with respect to the embodied visual arts, or at the very least whether its contributions constituted "joint work" for purposes of co-authorship and equal rights in such copyrights.

**ANSWER:** Defendant denies the allegations contained in Paragraph 76 and specifically denies that Plaintiff Lakefront is the sole author, joint author, or co-owner of the Blackhatter screenplay, motion picture, or related copyrights.

## COUNT III

## (DMCA MISREPRESENTATION (17 U.S.C. § 512(f))

77. Lakefront, Karum and Atkins repeat and reallege the allegations of paragraphs 1-76.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 76 as though fully set forth herein and otherwise denies any allegations inconsistent therewith.

78. As set forth above, Gecewicz made material misrepresentations and withheld material information in submitting takedown notices to online platforms, including Meta/Facebook, Instagram, Google, YouTube, WIX and Staff Me Up, targeting Plaintiffs for their alleged unauthorized use of copyrighted materials over which Gecewicz falsely claimed "sole ownership."

**ANSWER:** Defendant admits that she submitted copyright infringement notices to certain online platforms concerning materials associated with Blackhatter. Defendant denies that she made any material misrepresentations, withheld material information, or falsely claimed ownership rights in connection with such notices. Defendant otherwise denies the allegations contained in Paragraph 78.

79. Gecewicz made these material misrepresentations with knowledge of or in reckless disregard as to their falsity, and withheld material information purposefully to mislead the unwitting platforms into removing content.

**ANSWER:** Defendant denies the allegations contained in Paragraph 79. Defendant specifically denies that she made any material misrepresentation with knowledge of its falsity or with reckless disregard for the truth. Defendant further denies that she purposefully withheld information or intended to mislead any platform. Defendant otherwise denies the allegations contained in Paragraph 79.

80. As a result of Gecewicz's material misrepresentations and omissions, Plaintiffs have been injured.

**ANSWER:** Defendant denies the allegations contained in Paragraph 80 and specifically denies that any act or omission by Defendant caused the injuries alleged by Plaintiffs.

## COUNT IV
### (LANHAM ACT (17 U.S.C. § 1255(a))

81. Lakefront, Karum and Atkins repeat and reallege the allegations of paragraphs 1-80.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 80 as though fully set forth herein and otherwise denies any allegations inconsistent therewith.

82. The Chicago film industry is notably smaller and comparatively much less active than in other coastal markets, and there is substantial competition among local production companies seeking to produce films in Chicago.

**ANSWER:** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 82 and therefore denies the same.

83. Success for a production company in Chicago is predicated substantially on building a portfolio of credits and promoting them to aspiring local area film makers.

**ANSWER:** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 83 and therefore denies the same.

84. As set forth above, Gecewicz made false and misleading statements of fact in commerce, including false claims of sole authorship, sole production, and exclusive ownership of the Film in violation of 15 U.S.C. § 1125(b).

**ANSWER:** Defendant denies the allegations contained in Paragraph 84. Defendant specifically denies that she made any false or misleading statement of fact concerning the authorship, production, or ownership of Blackhatter and further denies that she violated 15 U.S.C. § 1125(a). Defendant otherwise denies the allegations contained in Paragraph 84.

85. These statements were made in commercial advertising and promotion and were likely to deceive consumers in the industry.

**ANSWER:** Defendant denies the allegations contained in Paragraph 85 and specifically denies that any statement made by Defendant constituted commercial advertising or promotion, was likely to deceive consumers, or caused the harm alleged by Plaintiffs.

86. Gecewicz's actions constitute unfair competition in violation of 15 U.S.C. §1125(a).

**ANSWER:** Defendant denies the allegations contained in Paragraph 86 and specifically denies that her actions constituted unfair competition or otherwise violated 15 U.S.C. § 1125(a).

87. Gecewicz's actions caused competitive and reputational harm to Plaintiffs.

**ANSWER:** Defendant denies the allegations contained in Paragraph 87 and specifically denies that her actions caused any competitive or reputational harm to Plaintiffs.

88. Gecewicz's actions were purposeful and willful, thereby justifying trebling any award to Plaintiffs pursuant to 15 U.S.C. § 1117(a).

**ANSWER:** Defendant denies the allegations contained in Paragraph 88 and specifically denies that her actions were purposeful, willful, or justify trebling any award to Plaintiffs pursuant to 15 U.S.C. § 1117(a).

## COUNT V

## (BREACH OF PRODUCTION AGREEMENT)

89. Lakefront, Karum and Atkins repeat and reallege the allegations of paragraphs 1-88.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 88 as though fully set forth herein.

90. The Production Agreement is a valid and enforceable contract.

**ANSWER:** Defendant states that Paragraph 90 contains a legal conclusion regarding the validity and enforceability of the Production Agreement. To the extent a response is required, Defendant denies the allegations contained therein.

91. Indeed, even after she began her crusade against Plaintiffs, Gecewicz publicly acknowledged hiring Plaintiffs as producers, although she has since specifically disavowed the Production Agreement.

**ANSWER:** Defendant denies the allegations contained in Paragraph 91.

92. Karum and Atkins are either parties to or intended third-party beneficiaries of the Production Agreement.

**ANSWER:** Defendant denies the allegations contained in Paragraph 92 to the extent they characterize Karum and Atkins as parties to or intended third-party beneficiaries of the Production Agreement.

93. Lakefront, Karum and Atkins fulfilled their contractual obligations under the Production Agreement and had a contractual right and justifiable expectation to receive producer's credit for their considerable work.

**ANSWER:** Defendant denies the allegations contained in Paragraph 93 and specifically denies that Plaintiffs fulfilled all of their contractual obligations under the Production Agreement.

94. Gecewicz initially performed her obligations under the Production Agreement, before committing a series of systematic material breaches thereof described above, including the covenant of good faith and fair dealing implied therein by denying and depriving Plaintiffs of their fundamental expectancy under the Agreement.

**ANSWER:** Defendant denies the allegations contained in Paragraph 94.

95. As a result of Gecewicz's breach of the Production Agreement, Plaintiffs have been injured.

**ANSWER:** Defendant denies the allegations contained in Paragraph 95.

## COUNT VI

### (UNJUST ENRICHMENT)

96. Pleading in the alternative, Lakefront, Karum and Atkins repeat and reallege the allegations of paragraphs 1-88.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 88 as though fully set forth herein.

97. Lakefront, Karum and Atkins believe that the Production Agreement was and is a valid and enforceable contract, although Gecewicz now claims that the Agreement was "void from the start," even though she accepted the considerable benefits thereunder from Plaintiffs in connection with the *Blackhatter* project.

**ANSWER:** Defendant denies the allegations contained in Paragraph 97.

98. In exchange for their considerable work, Plaintiffs had a reasonable expectation of compensation, a substantial part of which was receiving producer's credit.

**ANSWER:** Defendant denies the allegations contained in Paragraph 98.

99. Denying Plaintiffs the credit that they earned would unjustly enrich Gecewicz at Plaintiffs' expense.

**ANSWER:** Defendant denies the allegations contained in Paragraph 99.

## COUNT VII

### (TORTIOUS INTERFERENCE)

100. Lakefront, Karum and Atkins repeat and reallege the allegations of paragraphs 1-99.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 99 as though fully set forth herein.

101. Lakefront had contracts with clients, as well as with Google, Meta/Facebook, YouTube, Instagram, Wix and IFA, and a reasonable expectancy of continuing an internship pipeline with DePaul University, and continued professional hiring relationship with crew members.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 101 and therefore denies the same.

102. Karum and Atkins had contracts with Google, Meta/Facebook, YouTube, and Instagram relating to the use and access of their respective accounts.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102 and therefore denies the same.

103. Gecewicz, without any legitimate competitive justification, interfered with those contracts and expectations, as described above.

**ANSWER:** Defendant denies the allegations contained in Paragraph 103 and specifically denies that she interfered with any contracts or expectations without legitimate justification.

104. As a direct and proximate result of Gecewicz interference, Plaintiffs have been injured.

**ANSWER:** Defendant denies the allegations contained in Paragraph 104.

105. Gecewicz acted willfully with the express intention of harassing and harming Plaintiffs, warranting an award of punitive damages to punish Gecewicz and dissuade her from engaging in similarly wrongful conduct in the future.

**ANSWER:** Defendant denies the allegations contained in Paragraph 105 and specifically denies that she acted willfully or with the intention of harassing or harming Plaintiffs. Defendant further denies that any alleged harm to Plaintiffs was caused by her conduct.

## COUNT VIII

### (CIVIL CONSPIRACY)

106. Lakefront, Karum and Atkins repeat and reallege the allegations of paragraphs 1-105.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 105 as though fully set forth herein.

107. As set forth above, Gecewicz conspired with others, including Candice Rose, Winter Davis, Katharin Mraz, and/or Jordan Ancel as part of a coordinated campaign of harassment against LFP and its principals, and interference with LFP's business with the express purpose of injuring Plaintiffs.

**ANSWER:** Defendant denies the allegations contained in Paragraph 107 and specifically denies that she conspired with any person to harass Plaintiffs, interfere with Plaintiffs' business, or injure Plaintiffs.

108. Gecewicz took acts, described above, in furtherance of the referenced conspiracy.

**ANSWER:** Defendant denies the allegations contained in Paragraph 108 and specifically denies that she participated in or took any acts in furtherance of any conspiracy.

109. Plaintiffs have suffered economic loss, including lost opportunities, and reputational harm as a direct and proximate result of the referenced conspiracy.

**ANSWER:** Defendant denies the allegations contained in Paragraph 109.

110. Gecewicz acted willfully, justifying an award of punitive damages to punish and dissuade her from engaging in such tortious conduct in the future.

**ANSWER:** Defendant denies the allegations contained in Paragraph 110 and specifically denies that she acted willfully or engaged in any tortious conduct. Defendant further denies that Plaintiffs are entitled to punitive damages.

## COUNT IX

### (SPOLIATION OF EVIDENCE)

111. Lakefront, Karum and Atkins repeat and reallege the allegations of paragraphs 1-110.

**ANSWER:** Defendant incorporates her responses to Paragraphs 1 through 110 as though fully set forth herein.

112. Gecewicz had actual knowledge regarding the filing and specific allegations alleged in Ancel's above-referenced 2023 Circuit Court case against Karum, as well as a 2024 Complaint filed by Lakefront and Karum in the United States District Court for the Northern District of Illinois (pending as case no. 1:24-cv-01108 before the Hon. Magistrate Judge M. David Weisman) against Ancel (and his companies) and Candice Rose to redress the above referenced coordinated smear campaign they were actively orchestrating.

**ANSWER:** Defendant admits that she was generally aware of litigation involving Jordan Ancel, Lakefront, and/or Jennifer Karum. Defendant denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 112 and therefore denies the same.

113. For good measure, after she posted derogatory and defamatory comments on Lakefront Pictures' Google page (see above), in direct violation of the mutual non-disparagement clause in the Production Agreement, on July 31, 2024, the undersigned emailed Gecewicz putting her on

notice "**to preserve all documents relevant to your communications with or about Lakefront Pictures and/or Mr. Ancel including all documents, records, files, data compilations, communications (including emails, text messages, direct messages, posts and comments on any social media channel or message board), whether stored in hard copy or electronic format), and all tangible objects that are in their possession, custody and/or control, and must cease all file deletion or destruction, whether contemplated as part of a formal retention/destruction policy or not.**" (emphasis in original).

**ANSWER:** Defendant admits that she received an email dated July 31, 2024, containing the quoted document preservation language. Defendant denies the remaining allegations contained in Paragraph 113.

114. As such, Gecewicz had a duty to preserve relevant evidence.

**ANSWER:** Defendant states that Paragraph 114 contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations contained therein.

115. Notably, in her derogatory post, Gecewicz boasted that she had "a substantial paper trail" to support her claims against Lakefront and Karum, but when she was subpoenaed shortly thereafter, she claimed to have no responsive documents.

**ANSWER:** Defendant denies the allegations contained in Paragraph 115, including the characterization that she claimed to have no responsive documents. Defendant further states that her reference to a "substantial paper trail" concerned her own experiences, communications, and documentation relating only to the Blackhatter project. Defendant further states that she did not

understand the subpoena to seek the materials referenced in that statement. Defendant otherwise denies the allegations contained in Paragraph 115.

116. Moreover, it is clear from the document productions made by others, that Gecewicz sent or received a substantial number of responsive (and incriminating) communications that were responsive to the subpoena served upon her.

**ANSWER:** Defendant denies the allegations contained in Paragraph 116 and specifically denies that she withheld responsive communications or that any communications were incriminating.

117. On information and belief, Gecewicz breached her duty to preserve evidence by purposefully deleting or destroying damning communications, with knowledge that they were relevant to pending litigation and/or after receiving the referenced email demanding that she preserve the relevant evidence.

**ANSWER:** Defendant denies the allegations contained in Paragraph 117 and specifically denies that she purposefully deleted or destroyed any communications or otherwise breached any duty to preserve evidence.

118. On information and belief, Gecewicz acted in bad faith in destroying material evidence to shield herself and others from liability, some of which may not be obtained or obtainable from other sources.

**ANSWER:** Defendant denies the allegations contained in Paragraph 118 and specifically denies that she destroyed any material evidence, acted in bad faith, or sought to shield herself or any other person from liability.

119. Gecewicz's breach of duty has caused substantial prejudice to Plaintiffs, including adversely impacting their ability to prove claims or defenses, causing them to needlessly incur incremental litigation costs, and potentially limiting their ability to recover appropriate damages.

**ANSWER:** Defendant denies the allegations contained in Paragraph 119 and specifically denies that she caused any prejudice to Plaintiffs, increased their litigation costs, or impaired their ability to prove any claims or defenses.

120. Gecewicz knew or should have known that her failure to preserve evidence would cause precisely this harm.

**ANSWER:** Defendant denies the allegations contained in Paragraph 120 and specifically denies that she failed to preserve evidence or knew that any alleged harm to Plaintiffs would result.

## <u>AFFIRMATIVE DEFENSES</u>

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

Plaintiffs' Complaint, and each purported cause of action therein, fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

(Good-Faith Ownership Belief)

At all relevant times, Defendant acted in the good-faith belief that she possessed ownership rights and other protectable interests relating to Blackhatter. Defendant's beliefs were supported

by written agreements, copyright registrations, screenplay registrations, project documentation, and communications with project participants. Defendant further states that the screenplay copyright registration identified both Amanda Gecewicz and Sarah Quinn as authors, and therefore Defendant did not conceal Sarah Quinn's participation in the screenplay. Defendant denies that any copyright registration, DMCA notice, or related communication was knowingly false, fraudulent, deceptive, or submitted in bad faith.

## THIRD AFFIRMATIVE DEFENSE

### (Good-Faith Copyright Enforcement)

Any copyright registrations, DMCA notices, takedown requests, communications with online platforms, or related actions undertaken by Defendant were made in good faith based upon Defendant's understanding of her rights and interests in Blackhatter and related materials. Prior to submitting the challenged takedown notices, Defendant raised ownership, authorship, credit, and contractual concerns regarding Plaintiffs' conduct, including through counsel in a written termination letter dated January 27, 2026. Defendant further states that Plaintiffs never responded to the letter and the challenged content remained online following such notice. Defendant denies knowingly making any material misrepresentation to any platform or third party.

## FOURTH AFFIRMATIVE DEFENSE

### (Plaintiffs' Prior Material Breach)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs materially breached their obligations, duties, representations, and agreements before the conduct alleged in the Complaint,

including conduct that formed the basis of Defendant's January 27, 2026 termination of the parties' relationship.

## FIFTH AFFIRMATIVE DEFENSE

### (Termination)

Plaintiffs' claims are barred, in whole or in part, because the Production Agreement was terminated following Plaintiffs' material breaches and misconduct. Any actions taken by Defendant thereafter were authorized by law and consistent with her rights following such termination.

## SIXTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, and Acquiescence)

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or acquiescence. Plaintiffs knowingly accepted, approved, benefited from, or failed to timely object to conduct of which they now complain.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiffs are barred from obtaining equitable relief under the doctrine of unclean hands because their own conduct relating to the matters alleged in the Complaint was inequitable, wrongful, misleading, undertaken in bad faith, or otherwise inconsistent with the relief sought.

## EIGHTH AFFIRMATIVE DEFENSE

### (Lack of Causation)

Plaintiffs' alleged injuries and damages, if any, were caused by their own conduct, the actions of third parties, independent business decisions made by online platforms, and/or factors unrelated to any wrongful act by Defendant.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Plaintiffs' claims for damages are barred or reduced because Plaintiffs failed to take reasonable steps to avoid, minimize, or mitigate any alleged damages.

## TENTH AFFIRMATIVE DEFENSE

### (Ownership, Creative Authority, and Good-Faith Reliance)

Defendant states that her actions were undertaken in reliance upon written agreements, project documentation, copyright registrations, screenplay registrations, and other materials reflecting Defendant's ownership interests, creative authority, and role as creator of Blackhatter. Such documents include, among others, the September 2021 Production Agreement identifying Defendant as the Owner of Blackhatter, the Indigo Pictures addendum identifying Lakefront Pictures as acting on behalf of Defendant's production company, copyright registrations obtained in 2023, and a February 2026 written clarification executed by Sarah Quinn confirming that Defendant created Blackhatter, retained final creative authority, and possessed sole ownership of the underlying intellectual property rights. Defendant further states that Sarah Quinn expressly disclaimed any ownership or joint authorship interest in Blackhatter. Defendant denies that Plaintiffs possessed the exclusive ownership interests alleged in the Complaint.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Reservation of Additional Defenses)

Discovery and investigation are ongoing. Defendant reserves the right to assert additional defenses, amend existing defenses, and supplement this Answer as permitted by the Federal Rules of Civil Procedure and orders of this Court.

WHEREFORE, Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice, enter judgment in favor of Defendant and against Plaintiffs, award Defendant her costs as permitted by law, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Amanda Gecewicz

Amanda Gecewicz

1 E Erie St. Suite 525-2761

Chicago, IL 60611

amg4894@gmail.com

Defendant, Pro Se

## CERTIFICATE OF SERVICE

I, Amanda Gecewicz, certify that on June 4, 2026, I served a copy of Defendant Amanda Gecewicz's Answer and Affirmative Defenses to Plaintiffs' Complaint upon counsel for Plaintiffs by electronic mail at:

George J. Spathis

Levenfeld Pearlstein, LLC

gspathis@lplegal.com

/s/ Amanda Gecewicz

Amanda Gecewicz

Defendant, Pro Se